THE STATE v. WILLIAMS *et al., Plaintiffs in Error.*

1. **Change of Venue to Pettis Criminal Court.** Under the act establishing the criminal court of the sixth judicial circuit and Johnson county, it was not necessary that an order awarding a change of venue in a criminal case to any county over which that court had jurisdiction should designate it as the court to which the case should go. As soon as the change was awarded, it became the duty of the clerk to certify the case to that court, without special directions to that effect.

2. **Continuance.** The court holds that under the circumstances detailed in the opinion, the trial court did not abuse its discretion in refusing a continuance asked for by the accused, on the ground of the absence of a witness.

3. **Limiting the Argument.** The trial court has a discretionary power, in a criminal case, to limit counsel for the accused in argument to the jury, and to require him to close when his time has expired, and this court will not interfere with this discretion unless it is abused.

4. **Murder.** The court instructed the jury that if defendants had time to think, and did intend to kill deceased, for a moment, then the killing was a willful, deliberate and premeditated killing. *Held,* error. There may be an unlawful intentional killing which is not murder in the first degree. Hence, whether such a killing is deliberate and premeditated or not, is a question for the jury, and cannot be determined as matter of law by the court.

5. **Correction of Errors by Trial Court, on the spot, Encouraged.** The counsel for the accused, while addressing the jury and endeavoring to show them that his clients should not be convicted of a higher crime than murder in the second degree, was interrupted by the judge with the declaration that the instructions would not warrant a verdict of murder in the second degree; that under the instructions it was murder in the first degree or nothing. After the jury had retired to consider of their verdict, the judge, at their request, had them recalled, and, in open court and in the presence of the accused and their counsel and of the State's attorney, gave them correct instructions in relation to murder in the second degree, and the accused were found guilty of that offense. *Held,* that no error had been committed. The accused could not have been prejudiced, and this court is inclined to encourage trial courts to correct errors committed in the progress of the trial rather than to force them to persist in them after they are discovered.

*Error to Pettis Criminal Court.*—HON. W. H. H. HILL, Judge.

*Lay & Belch* for plaintiffs in error.

*J. L. Smith*, Attorney-General, and *Geo. P. B. Jackson* for the State.

HENRY, J.—The defendants insist that the court should have dismissed the cause, because the record did not show

1. CHANGE OF VENUE TO PETTIS CRIMINAL COURT.

that a change of venue was awarded by the circuit court of Miller county to the criminal court of Pettis county. The order was, that a change of the venue of said cause be awarded to the county of Pettis in the sixth judicial circuit of Missouri, and it is further ordered by the court that the clerk of this court transmit to the clerk of the criminal court of said county of Pettis a full transcript of the record and proceeding in this cause, duly certified under his hand as clerk and the seal of this court." Section 6, page 42, acts 1875, establishing " the criminal court of the sixth judicial circuit and county of Johnson," provides that " all criminal cases removed from any county to any of the counties composing said criminal judicial circuit, shall be certified to, tried and determined by said criminal court in the county to which the same may be sent." When the change of venue was awarded to Pettis county, it became the duty of the clerk of the Miller circuit court, under that section, to certify the case to the criminal court of Pettis county, even though the order awarding the change of venue to Pettis had been silent on the subject of certifying the record. There was no other court for Pettis county which had jurisdiction to try the cause. It was certified to and tried by the proper court, and the motion to dismiss was properly refused.

Defendants also complain of the refusal of the court to grant them a continuance on their application. The

2. CONTINUANCE.

witness on account of whose absence the continuance was asked, resided in Miller county. He had once been subpœnaed as a witness, but failed to attend. It was his duty to be present at the next term ,without

further notice. Being in contempt of the court at the time, for which he was summoned, defendants should have procured an attachment to compel his attendance at the next term. They should, at least, have had another subpœna issued earlier than the 19th day of October, to procure the attendance of the witness at the ensuing November term of the Pettis criminal court. We do not think that under the circumstances the court abused its discretion in refusing the continuance.

Nor was it error to limit counsel in argument to the jury, or to require the defendants' counsel to close his argument at the expiration of the hour given him. This has more than once been decided to be a matter in the discretion of the court, and we see no reason to determine otherwise, when that discretion has not been abused. *State v. Linney*, 52 Mo. 40.

3. LIMITING THE ARGUMENT.

The instructions given by the court at the request of the State are unobjectionable, except the first, in regard to murder in the first degree, but as defendants were acquitted of that charge, they cannot complain of that error. We call attention to that error, however, in order to correct it. The instruction declared that "if said defendant, John Williams, had time to think, and did intend to kill deceased for a moment, then the killing is a willful, deliberate and premeditated killing," &c. As there may be an unlawful intentional killing that is not murder in the first degree, the court erred in declaring, as a matter of law, that an intentional killing is willful, deliberate and premeditated. Whether deliberate or premeditated, is a matter that must be left to the jury for their consideration. If defendants had been found guilty of murder in the first degree, the error here noticed would have been fatal. In other respects the instructions are faultless. Those asked by defendants in regard to the drunkenness of John Williams, when he fired the fatal shot, were properly refused by the court. *State v. Cross,*

4. MURDER.

27 Mo. 332; *State v. Harlow*, 21 Mo. 446; *State v. Hundley*, 46 Mo. 414; *State v. Pitts*, 58 Mo. 556.

The amended transcript shows that defendants, in person and by their counsel, were present throughout the entire trial, and when the verdict was delivered into court. In the original transcript this did not appear. We presume that the brief of defendants' counsel was prepared before the amended transcript was filed.

Another question which we deem it necessary to notice particularly, is whether the court erred in stating to the 5. CORRECTION OF counsel for defendants, while addressing the ERROR BY TRIAL COURT, ON THE jury, and endeavoring to show them that de-SPOT. ENCOUR- AGED fendants should not be convicted of a higher crime than murder in the second degree, " that the instructions would not warrant a verdict of murder in the second degree; that under the instructions it is murder in the first degree or nothing;" and then, after the jury retired to consider of their verdict, at their request, giving them additional instructions, properly defining murder in the second degree, and telling them, that under the indictment, they might find the defendants guilty of that crime, if they found the facts necessary to constitute that offense. It seems that the court, on reflection, thought that this evidence would warrant such instructions, and thereupon declared that they might, as the counsel was endeavoring to convince them, find defendents guilty of a lower offense than murder of the first degree. The counsel was not permitted to convince the jury, but seems to have succeeded in convincing the court, and procuring instructions which were more likely than the argument of counsel to induce the jury to acquit defendants of the first degree of murder. We cannot see that defendants were possibly prejudiced by those instructions, especially as they were found guilty of murder in the second degree. The instructions were given in open court, in the presence of the accused and their counsel, and we are rather inclined to encourage trial courts to correct errors committed by them in the progress

of the trial, than to force them to persist in an error after its discovery. In this case the court pursued the proper course by calling the jury into court, and in the presence of the State's attorney, and the prisoners and their counsel, giving the jury instructions which should have been given before.

The eighth instruction asked by defendants, and refused, was that if John Williams shot and killed Calvin without intending to kill him, and such shooting was the result of negligence, the crime was manslaughter in the fourth degree. The court would have scandalized itself had it given that instruction. There was not a particle of evidence to warrant it. The evidence shows that Calvin attempted to quiet John Williams, who had an open knife in a crowd on a ferryboat, and was seeking a quarrel with any one who would accommodate him. Deceased asked him, as a friend, to put up his knife and be quiet. In the colloquy between Williams and deceased, Williams called deceased a d—d liar. Thereupon deceased struck him, and after a short scuffle between them, they were separated. William Williams crossed the river in a skiff, "breathing out threatening and slaughter" against the man who had struck his brother. When he had reached the side of the river on which the ferryboat had landed, he went into the crowd and commenced a quarrel with deceased, who certainly showed no disposition to cower, but struck William Williams with his fist, which seemed somewhat to cool his ardor. Deceased and John Williams then agreed to meet next morning and "fight it out." They shook hands over the agreement and separated. William Williams then procured a pistol, which he had lent that morning to one of the persons present, and, after firing it off, reloaded and gave it to John Williams, who, within fifteen minutes, without any additional provocation, shot the deceased from his horse. If they prefer a term in the penitentiary to death, defendants have reason to be thankful that they were not

found guilty of murder in the first degree. The judgment is affirmed. All concur.

AFFIRMED.