REAGAN, Appellant, v. ST. LOUIS TRANSIT
COMPANY.

In Banc, February 24, 1904.

1. **ABSTRACT: Sufficiency: Full Record.**  Where the appeal is by
   complete transcript, it is not necessary that the abstract set
   out the final judgment or the order of appeal or the record
   entry of the filing of the bill of exceptions.   A recital of those
   facts in the abstract is sufficient.

2. **NEGLIGENCE: Burden of Proof: Instruction.**  An instruction
   to the effect that the burden of proving the facts set out in the
   instructions as necessary to entitle plaintiff to recover is upon
   plaintiff, does not put upon plaintiff the burden of showing that
   the accident could have been prevented by the exercise of the
   high degree of care that is incumbent upon the carrier of pas-
   sengers.   Such an instruction is not error where the defense is
   simply a denial of the truth of the facts alleged by plaintiff to
   be negligent.

3. **ARGUMENT OF COUNSEL: Rule of Court: Opening and
   Closing.**  A rule of court dividing the time for argument
   equally between the sides, and giving to the side which main-
   tains the affirmative of the issue the right to open and close,
   and providing that such party shall not consume in his closing
   argument, over half the time allotted to him, and that if he
   decline to make the opening argument he shall be considered
   as thereby waiving his privilege of closing, is a reasonable rule.

4. ———**: Time Limitation.** The amount of time allowed counsel to
   argue his case before the jury will not be interfered with except.

in a case of clear abuse of the judicial discretion which is lodged in the trial court in such matters. To justify an appellate court to adjudge a trial court guilty of an abuse of that discretion the case must be clear, cogent and convincing; in fact, sufficient to convict the trial court of manifest prejudice, partiality or misconduct.

5. ———: ———: **Fifteen Minutes.** Plaintiff sued for damages for injuries received in getting off a street car, alleging negligence. Her contention was that the car had slowed down so that the motion was imperceptible or had stopped when she attempted to step off, but that while she was going down the steps the car started with a jerk and she was thrown down, and badly injured. The defendant contended that plaintiff got off of the car while it was in motion and before it reached the street crossing, and that in consequence she fell down, and that there was no jerk or starting forward of the car. Plaintiff was the only witness on her side as to the cause of the accident; for the defendant there were five witnesses; and the entire hearing consumed not over three or four hours. The court first announced twenty minutes on the side for argument, but on plaintiff's exception reduced the time to fifteen minutes. *Held,* that the time allowed does not indicate such abuse of the court's discretion in such matters as would authorize this court to reverse the judgment for defendant.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge.

AFFIRMED.

*A. R. Taylor* for appellant.

(1) The instruction given by the court is not the law as applicable to carriers of passengers. It is the law of the relation between carrier and passenger that it is the duty of the carrier to safely carry the passenger to her point of destination on the carrier's line, and there to stop the car and keep it stopped a reasonable time, to enable the passenger to alight in safety from the car whilst so stopped—if the carrier can do so by the highest practical care of a very prudent and skillful carrier of passengers. The starting of the car before a passenger has time to alight, or whilst in the act of alighting in the presence of the conductor, is prima facie negligence, and casts upon the carrier the burden

of proving that such starting of the car could not have been prevented by the exercise of the high degree of care exacted by the law of the carrier. This is the rudimental law of the relation. Hutchinson on Carriers (2 Ed.), secs. 800-801; Dougherty v. Railroad, 81 Mo. 329; Och v. Railroad, 130 Mo. 52; Hite v. Railroad, 130 Mo. 137. (2) The ruling of the court awarding only fifteen minutes to a side to argue the case was a practical denial of the litigant to be heard in court upon her case. There was scarcely time under this allowance for counsel to explain the law of the case to the jury as contained in the instruction, without any effort to recall the testimony of the witnesses and apply the law to the testimony. White v. People, 90 Ill. 117; Dille v. State, 34 Ohio St. 617; Hunt v. State, 49 Ga. 255; State v. Page, 21 Mo. 257; State v. Baker, 136 Mo. 83. (3) Rule 29 of the circuit court of the city of St. Louis is an innovation on the practice which existed in this State during its history, and we know of no rule like it elsewhere. It seems to be a discrimination against plaintiff's rights in court. There is an apparent partiality in the rule. Thus the plaintiff must open his case by argument. If he does not do so he loses the right to be heard at all. Yet, the defendant has the right to argue, whether the plaintiff wishes to make an opening argument or not. (4) The action of the trial court was arbitrary and despotic as evidenced by the record. The court first announces that counsel will be allowed twenty minutes a side for the argument. Counsel for plaintiff objects to the limit of twenty minutes and asks for further time. Thereupon the court, we submit, forgetting its dignity and responsibility and in a spirit of resentment because counsel for plaintiff did not meekly accept, but objected and protested, took away from the insufficient time allotted twenty-five per cent of the time he had first allotted. Can a court, whose high purpose it is to see that justice be administered, give its approval to such conduct?

*Geo. W. Easley,* with *Boyle, Priest & Lehmann* for respondent.

(1) This court has no jurisdiction of this cause, because it is not shown by the appellant's abstract of record that any final judgment was entered, from which an appeal would lie, nor does the abstract filed show that any appeal was ever granted appellant by order of the court below. R. S. 1899, secs. 806-809; State v. Roscoe, 93 Mo. 146. (2) The record, as shown by appellant's abstract, does not show that any bill of exceptions was filed in the court below, by order of the court entered of record, nor is there anything in the record to identify that part of the statement made in the abstract which bears a few of the earmarks of a bill of exceptions. The same can not be considered by this court as part of the record herein. Reno v. Fitz Jarrell, 163 Mo. 411; State v. Baty, 166 Mo. 561; Shoe Co. v. Williams, 91 Mo. App. 511; Allen v. Funk, 85 Mo. App. 460. The only thing to show the filing of a motion for a new trial is the recital in the unidentified and unfiled bill of exceptions. This is insufficient. McCormick & Co. v. Crawford, 72 S. W. 492. (3) There was no error in the instruction given for defendant, of which the appellant complains. The burden of proof was upon the plaintiff. The accident to plaintiff was not of a character to cast upon defendant the burden of disproving negligence. The Missouri cases hold that presumptions of negligence may be made when the accident is caused in the followings ways: (a) Where the collision of the vehicle, in which the passenger was being transported, was with another vehicle of the carrier, or by reason of the vehicle of another coming in contact with the carrier's vehicle, because of the negligence of the carrier. Clark v. Railroad, 127 Mo. 197; Feary v. Railroad, 62 S. W. 542; Shuber v. Railroad, 87 Mo. App. 618; Obsen v. Railroad, 152 Mo. 426. (b) Where

the carrier's vehicle broke down. Lemen v. Chandler, 88 Mo. 533. (c) Where the carrier's vehicle was derailed. Hipley v. Railroad, 88 Mo. 351; Furnish v. Railroad, 102 Mo. 453. The true rule in Missouri seems to be thus expressed. The court, after discussing the question of presumption, says: "The rule thus announced has no application where the injury is occasioned by an outside agency and without fault on the part of the carrier. In such a case a recovery can only be had upon proof of negligence on the part of the carrier." Hite v. Railroad, 130 Mo. 132; Potts v. Railroad, 33 Fed. 610. (4) There was no error in the time limited for argument. The whole question for discussion was as to whether the plaintiff was jerked off the car or not. Ample time was given for a thorough discussion of that subject.

MARSHALL, J.—This is an action for damages for personal injuries.

The case is as simple a one of its kind as may be imagined. The plaintiff charges that she was a passenger on one of the defendant's cars, and desired to get off of the car at the corner of Easton and Grand avenues; that when the car reached said place and whilst it "was slowed up so as to be moving imperceptibly, or stopped for the purpose of allowing the plaintiff to alight therefrom at her said point of destination, and, whilst the plaintiff was in the act of stepping off said car, whilst so slowed up or stopped, and plaintiff is unable to say whether it was so slowed up or stopped, the defendant did, by its servants in charge of said car, carelessly and unskillfully cause and suffer said car to move forward and with increased motion, whereby plaintiff was thrown upon the street, and greatly and permanently injured," etc.

The petition further charges that the city ordinance provides that conductors shall not allow women or chil-

dren to enter or leave a car while it is in motion, and that the defendant's conductor "did allow said plaintiff to leave said car while the same was in motion," which act directly contributed to the injury. The answer is a general denial and a plea of contributory negligence.

The plaintiff first read in evidence the city ordinance pleaded. She then produced four witnesses, to-wit, Dr. S. B. Prouty, Dr. R. L. Campbell, Mrs. Thomas McCune, and the plaintiff herself. The two doctors testified that they were her physicians after the accident, and they testified only to the extent of her injuries. Mrs. McCune testified that she is a cousin of the plaintiff, and that she nursed her after the accident. None of these witnesses testified as to the accident, and the defendant introduced no evidence whatever bearing upon any fact testified to by these witnesses, so that the testimony of these three witnesses was absolutely uncontradicted.

The plaintiff was the only witness, in her behalf, who testified as to the cause of the accident. The abstract of the record, of her testimony prepared by her counsel, covers a page and a half, and is here reproduced in full. It is as follows:

"Bridget Reagan, plaintiff, testified in her own behalf: That she is about 40 years old, and that her occupation was that of a cook. That she earned $19 per month. That on the evening of October 21st she boarded one of the defendant's cars on Clara and Easton avenues, and that her place of destination was Grand and Easton avenues. That when she got within a block of Grand avenue she rang the bell to notify the conductor of her intention to get off the car, and when the car had *passed the crossing of* Grand avenue it *stopped*. She then started to get off the car, and, as she was getting down on the last step, the car gave a jerk and threw her off. The conductor and a policeman

were standing on the rear platform.  She had to pass
the conductor, who was in reach of her, and that he
neither did nor said anything to her regarding her leav-
ing the car.  That there were two steps on the car, and
that *she was thrown as she was* taking the last step.
That she fell east of the crossing, near the curbstone.
The policeman picked her up and carried her to the
drugstore, on the north side of the street, and then
took her in an ambulance to the City Hospital, where she
remained twenty-four hours, and then she was taken to
the St. Mary's Infirmary, where she was treated by Drs.
Prouty and Campbell for twelve weeks.  That she can
not bear any weight on her injured limb, and can only
move about with the aid of a chair, leaning on the back
of it.  That she has been unable to do anything since
she was hurt.  That she paid $72 for nursing.

"Cross-Examination:

"Am single and have lived in the city for sixteen
years.  At the time of the accident I was working for
Mrs. Carter, as a cook.  I occupied the second seat from
the rear, sitting on the south side.  Arose from my seat,
as the car was about to stop, and went to the door, where
*I waited until the car had stopped.*  Then I stepped
from the platform to the step, and when I started to
*leave the step to get to the ground the jerk came.*  That
is what I meant when I said there were two steps.

"Q.  Now, was it a hard or light jerk?  A.  Yes,
sir; it was a hard jerk.

"Q.  And was the car standing perfectly still at
that time, was it—before the jerk?  A.  Yes, sir.

"I fell flat on the ground, with my head towards
the east and my feet towards the west.  Don't know
how far the car went after I fell, but it was only a little
ways.  Did not hear any signal given by the conductor
to start the car.  Have not been able to leave the house
since the accident."

The record shows that the defendant introduced five witnesses, who testified that they were on the rear platform of the car at the time the plaintiff started to get off, at Grand and Easton avenues, and that she got off of the car, while it was moving slowly, but before it was stopped, and that the car stopped within a few feet after the plaintiff got off, and that there was no jerk nor increased forward movement of the car, and that plaintiff was not thrown off of the car, but that she voluntarily got off of the car while it was in motion, and fell after she got off in consequence of getting off while the car was in motion. The conductor testified that the plaintiff came out on to the back platform while the car was approaching Grand and Easton avenues, but that "there was nothing in her manner indicating that she intended to get off the car before it stopped."

This was all the evidence in the case. The record then shows that the following proceedings were had:

"The Court: I will allow twenty minutes on a side to argue the case before the jury.

"Mr. Taylor: I ask that more time be given than that. That is too short.

"The Court: That is longer than I usually give. Fifteen minutes on a side ordinarily do.

"Mr. Taylor: Well, we except to the ruling of the court on the ground that it was not sufficient.

"The Court: I will give you fifteen minutes on a side. I understood you to say fifteen minutes would not be enough time, but that twenty minutes would be sufficient."

The plaintiff saved an exception to this action of the court.

The court then, as shown by appellant's abstract, instructed the jury as follows:

"Thereupon the court, at the request of the plaintiff, gave to the jury the following instructions:

"If the jury find from the evidence in this case that the defendant, on the 21st day of October, 1900, was

operating the car mentioned in the evidence for the purpose of transporting passengers for hire from one point to another within the city of St. Louis, as a street railway company; and if the jury further find from the evidence that on said day the defendant by its servants in charge of its east-bound car received the plaintiff as a passenger thereon, to be carried to Easton and Grand avenues; and if the jury find from the evidence that the plaintiff paid her passage as such passenger to the defendant; and if the jury find from the evidence that said car was slowed down by defendant's servant in charge, so that its motion was imperceptible, or stopped to enable the plaintiff to alight from said car at her point of destination; and if the jury further find from the evidence that whilst said car was so slowed down or stopped by defendant's servants in charge of said car, to enable plaintiff to alight from said car at her said destination, the plaintiff proceeded to alight from said car at said point, *and that whilst doing so defendant's servants in charge of said car caused or suffered said car to be moved forward and with increased motion,* and that thereby the plaintiff was thrown upon the street and injured; and if the jury further find from the evidence that defendant's servants in charge of said car would, if they had exercised a high degree of care and skill, such as careful and skillful railway operators would exercise under the same or similar circumstances, have prevented such motion of said car at said time and neglected to do so; and if the jury find from the evidence that the plaintiff was exercising ordinary care for her own protection at the time of her injury, then the plaintiff is entitled to recover.

"The court instructs the jury that if they find from the evidence that the defendant, on the 21st day of October, 1900, was operating the car mentioned in the evidence for the purpose of carrying passengers for hire from one point to another in the city of St. Louis as a street railway company; and if the jury find from

the evidence that on said day the defendant, by its servants in charge of its said car, received the plaintiff as a passenger on its east-bound car at or near Clara and Easton, in the city of St. Louis, to be conveyed as such passenger to Grand and Easton avenues, in said city; and if the jury further find from the evidence in this case that the defendant's servants in charge of said car slowed down said car so that its motion was imperceptible, or stopped said car, at said Grand and Easton avenues, to enable the plaintiff to alight therefrom as such passenger whilst said car was slowed down or stopped; and if the jury find from the evidence that whilst said car was so slowed down or stopped at her said point of destination the plaintiff started to alight from said car as such passenger, and that whilst she was doing so and before she had a reasonable time or opportunity to so alight, defendants' servants in charge of said car caused or suffered said car to move forward with increased motion, and that thereby the plaintiff was thrown upon the street and injured; and if the jury find from the evidence that defendants' servants in charge of said car could, by the exercise of a high degree of care and skill, such as would have been exercised by careful and skillful railway employees under the same or similar circumstances, have prevented such motion of said car at said time and neglected to do so; and if the jury find from the evidence that the plaintiff was exercising ordinary care for her own protection at the time of the injuries, then the plaintiff is entitled to recover.

"If the jury find for the plaintiff, they should assess her damages at such a sum as they believe from the evidence will be a fair compensation to her: 1st, for any pain of body which she has suffered or will hereafter suffer by reason of her injuries and directly caused thereby; 2d, for any loss of earnings of her labor which she has sustained or will hereafter sustain by reason of her injuries and directly caused thereby;

3d, for any expenses necessarily incurred by her for medical attention and nursing which the plaintiff has sustained by reason of said injuries and directly caused thereby.

"If your verdict is for the defendant you will simply so state in your verdict."

Thereupon the court, at the request of the defendant, gave to the jury the following instructions:

"The court instructs the jury that if they find from the evidence that the plaintiff alighted from the defendant's car while the same was in motion, and that a woman of ordinary prudence would not have so alighted therefrom under such circumstances, and that but for such attempt on her part the plaintiff would not have been thrown down and injured, even though they also find that said car started forward with increased motion while she was so alighting and that the defendant was negligent in allowing it to do so, provided said action was not willful on the part of defendant's agents in charge of its car, then the plaintiff is not entitled to recover and your verdict must be for the defendant.

"If the jury find from the evidence that both the plaintiff and defendant were guilty of some act of negligence as set out in these instructions which directly contributed to cause the plaintiff's injuries, and that the negligence of neither without the negligence of the other would have caused the plaintiff's fall and injuries, then the plaintiff is not entitled to recover, and your verdict must be for the defendant."

To the action of the court in giving said instructions and each of them the plaintiff at the time excepted.

Thereupon the court of its motion gave the following instructions to the jury:

"The burden of proving the facts set out in these instructions as necessary to be proved in order to enable plaintiff to recover is upon the plaintiff; that is, the preponderance or greater weight of the testimony must

be on the side of the plaintiff; and unless she has so proven them she is not entitled to recover.

"The burden of proving any negligence in the plaintiff is upon the defendant.

"The court instructs the jury that the ordinance of the city of St. Louis read in the evidence was in force on the 21st day of October, 1900. And if the jury find from the evidence that the plaintiff did alight from the car on which she was a passenger at her point of destination in the city of St. Louis while the car was moving slowly, and further find from the evidence that defendant's servant and conductor in charge of the car on which she was a passenger, saw her preparing to alight from said car while in motion, and also saw her while she was proceeding to alight whilst said car was in motion and permitted her to do so without remonstrance or warning or any effort to prevent her doing so, then such conduct of said conductor was negligence, and if it directly contributed to cause plaintiff's injuries by being thrown upon the street by the motion of said car if she was so injured, and if the plaintiff was exercising ordinary care at the time of the injury for her own protection, then plaintiff is entitled to recover.

"Under this ordinance a conductor is required to use ordinary care in watching out for women who are about to alight from cars and thereupon to prevent them from leaving a moving car. When they have thus exercised ordinary care the provisions of the ordinance have been fulfilled."

To which ruling of the court in giving each of said instructions on its own motion, plaintiff at the time excepted.

The jury returned a verdict for the defendant. In due time the plaintiff filed a motion for a new trial, assigning as ground therefor, inter alia, the action of the court in limiting the arguments as aforesaid. The court overruled the motion, and in so doing rendered

an opinion, which the abstract of the record states to be as follows:

"In regard to the 5th, 6th, and 7th grounds for the motion for a new trial, it may be said that after the evidence was heard, which consumed in the hearing not over three or four hours, I thought fifteen minutes for each side was a fair allowance of time, and so stated to counsel. The matter was fresh in the minds of the jury, and the issues were not complicated. Upon consultation with the counsel, I understood that fifteen minutes was deemed by them too short, but that twenty minutes on each side would be satisfactory. Acting upon this understanding, I made the allowance of twenty minutes for each side. I must have misunderstood the counsel for plaintiff, as he excepted to the allowance of twenty minutes. Thereupon, I made the original allowance of fifteen minutes for each side, as in my judgment a fair allowance of time for argument. This allowance, of course, did not include the time required to read the instructions to the jury. Rule No. 29 of the circuit court of this circuit is, in my judgment, a fair rule tending to prevent (what too often occurred), plaintiff's counsel from making his opening argument a mere perfunctory recital, without either touching the issues of the case, or acquainting defendant with the line of his argument, reserving until his closing statement, when there was no opportunity for answer, every substantial argument in the case."

The plaintiff assigns two errors: first, error in the instruction as to the burden of proof, and, second, error in limiting the time for argument to fifteen minutes on a side. The whole of this court is of the opinion that the first assignment of error is untenable and that the instruction complained of correctly states the law applicable to facts such as are disclosed by this record. The second error assigned is therefore the only matter left for discussion.

## I.

The plaintiff contends that the trial judge abused his judicial discretion, in allowing only fifteen minutes on a side for argument.

In support of this contention the plaintiff cites five cases: White v. People, 90 Ill. 117; Dille v. State, 34 Ohio St. 617; Hunt v. State, 49 Ga. 255; State v. Page, 21 Mo. 257; and State v. Baker, 136 Mo. l. c. 83.

White v. People, 90 Ill. 117, was a prosecution for larceny. Nine witnesses were examined. They were allowed only five minutes to argue the case to the jury. This was held to be reversible error.

In Dille v. State, 34 Ohio St. 617, the charge was burglary and larceny. Eleven witnesses were examined. Half a day was consumed in taking the testimony, the evidence was circumstantial and conflicting and the defendant was represented by two counsel. The court allowed the defendant thirty minutes for argument, and this was held to be reversible error.

In Hunt v. State, 49 Ga. 255, the charge was assault, with intent to murder. The report of the case does not show how many witnesses were examined, nor how long a time was consumed in adducing the testimony, nor in fact any particulars as to the case or the trial. The court allowed defendant's attorney thirty minutes for argument, and then allowed him to run ten minutes over that time. His counsel protested that "he could not do justice to his client's case within the limited time prescribed by the court." It was held that in view of the Constitution of that State, giving every person charged with an offense the benefit of counsel, the trial court erred in limiting the time for argument.

In speaking of this case, the note to Yeldell v. State, 46 Am. St. Repts. l. c. 28, says: "This ruling is, however, directly opposed to all other authority examined on this topic." Later, however, it was held in Georgia

that the power of the court is limited to preventing idle repetition. [Williams v. State, 60 Ga. 367.] But since then a rule limiting the time has been adopted in that State. [2 Ency. Pl. and Pr., 703, note 3.]

In State v. Page, 21 Mo. 257, the charge was trespassing on school lands. "After the case was closed on both sides, the court stated that the defendant's counsel could only address the jury for thirty minutes, and afterwards stated that the defendant's counsel could only address the jury for fifteen minutes." The defendant's counsel objected and saved an exception, and upon the defendant being found guilty, and fined $160, which the court reduced to $100, he appealed to this court, and assigned as the principal error the action of the court in limiting the time for argument. This court affirmed the judgment of the trial court, and the opinion by RYLAND, J., is so apposite to the case at bar, that the following extensive excerpt is taken therefrom. The learned judge said:

"Can the circuit court limit the time in which a defendant's counsel shall address a jury in a criminal case? By the 13th article, section 9, of the State Constitution, it is declared that, 'In all criminal prosecutions, the accused has the right to be heard by himself and his counsel.' Now, in the nature of things, there must be some discretion left with the courts who have criminal jurisdiction, in this matter. How long has the accused and his counsel a right to consume the time of the court in their exercise of this right? There must be a limit to it as to duration. The right to be heard exists; it can not be taken away; nor can the court deny this right, as was done in Ward's case, in Virginia, reported in 3 Leigh. But there is also an inherent right in courts of justice to control and restrain the acts of parties and counsel and officers while engaged in the administration of justice before them. The courts must take care not to abuse these rights on the one side nor on the other. There are cases in which the time neces-

sary to a proper and fair elucidation of the matters involved in the prosecution, must be greater than in others. The courts must not, then, arbitrarily cut down the time in all cases to a certain limit. They must exercise proper discretion in such matters, granting longer or shorter time, as the intricacy, mass of matter, nature of offense, and the means or circumstances on which the defense may rest, may seem to require. This court will not countenance any act of the lower courts which may seem to owe its origin to mere caprice or arbitrary power, or wanton oppression. Nor, on the other hand, will we lend a willing ear to support the complaints of obstinate and willful or capricious opposition to the orders of the courts, made for advancement and completion of the business before them.

"The record before us shows first the allowance of thirty minutes, then the reduction of this to fifteen minutes. We can not say that this is an abuse of the discretionary power of the court. There may be a reason for this. The improper waste of the time of the court, or the urgent pressure of important business on the docket, or the improper opposition and behavior of the counsel—unnecessary, troublesome and vexatious—all may have their operation, or the plain and obvious statement of the facts of the case in evidence may not have required longer time, in the opinion of the court, for the defense, than fifteen minutes. At all events, we will not presume the court below did wrong; and we can not say that it did not allow the defendant to be heard by his counsel.

"This matter of limiting the time to be occupied, in the prosecution of causes before courts of justice, is of very ancient origin. It is found among the Greeks, and was carried thence to Rome. The Greeks had their instruments by which they measured time in the halls of judicature. The clepsydra was used. It was an instrument by which they measured time by means of the flowing of water through it, and so frequent and com-

mon was the practice of limiting the time to the speakers by water flowing through these instruments, that the word water was used metaphorically for time. When a speaker was allowed to speak so long, they said he was allowed so much water. The Greeks had an officer in their courts of justice, whose duty it was to watch this measuring of time, and when a certain amount was allotted to a speaker, if there were any documents to be read during his speech, the time the reading of such documents consumed was not to be estimated as any part of what had been allotted to him; therefore, this officer, whose station was near the clepsydra, stopped the water while the documents were being read. The orator did not waste his water in reading documents.

''Pliny tells us he was allowed ten large amphorae of water once, and so important was the cause in which he was engaged, that the judges added four more to the amount. He says he spoke five hours. He tells us, likewise, that he himself used to allow the accused as much water as he wanted.

''The tribune of the people, Titus Sabienus, only allowed half an hour to Cicero to speak in defense of Caius Rabirius, when he was prosecuted for murder. This too, on an appeal from the judgment of the Duumviri to the people. The orator complained of being cramped by the narrow space of time: 'for, though it would be nearly enough to make the defense for his client, it would not be enough for preferring the complaints he had a right to bring forward.' 'I have spoken the time allowed me,' he said, when about to conclude. And in no part of the monument erected by his genius to its own immortality, will you find a more polished or more intelligent gem than this half hour's work.

''We conclude, therefore, that a quarter of an hour allowed to a modern orator, in a petty case of cutting down timber on the school lands, can not be considered as an inhibition to be heard in defense of his client.

The judgment is affirmed, Judge LEONARD concurring.''

SCOTT, J., dissented, and held that under the Constitution the court has no power to limit in advance the argument of counsel to the jury. As hereinafter pointed out this position has since been many times declared not to be the law by nearly all courts that have spoken on the subject.

In State v. Baker, 136 Mo. 74, the defendant was indicated for carnal knowledge of his fourteen-year-old daughter, tried and convicted and sentenced to twenty years in the penitentiary. The court limited the argument to one hour on a side, and, in an opinion by GANTT, P. J., concurred in by SHERWOOD and BURGESS, JJ., this was held not to be error, the opinion saying: ''Ordinarily it is in the discretion of the court to limit argument even in capital cases like this.''

These, however, are not the only decisions of this court bearing upon the question, as will appear by the following cases:

Freligh v. Ames, 31 Mo. 253, was an action upon a promissory note, executed by the two defendants to one Lawrence. The defense was usury, and a denial of the plaintiff's ownership of the note. The court limited the argument to twenty minutes on a side. This was assigned as error, and this court affirmed the judgment with ten per cent damages for vexatious delay. The opinion was written by SCOTT, J., and he said: ''The court very properly limited the time to counsel for addressing them. This is a matter in the discretion of the court and will not be controlled here.'' From which it would appear that the learned judge had receded from the position taken by him in his dissenting opinion in State v. Page, 21 Mo. 257, wherein he said the trial court could not limit the time for argument.

Trice v. Railroad, 35 Mo. 416, was an action for damages for killing twenty head of hogs. Four witnesses testified. The court limited the defendant's counsel to ten minutes. This court affirmed the judg-

ment, in an opinion by DRYDEN, J., from which the following excerpt is taken:

"The only ground upon which we are asked to reverse the judgment of the circuit court, is the action of that court in restricting the time for the argument. The power of the courts to limit counsel in the time to be occupied in the argument of causes can not be denied. It is a power essential to the convenient dispatch of business, and to the good order of the courts. What restrictions shall be imposed under this power is a mere matter of practice, resting in a large degree in the discretion of the judge in every case. Indeed in the case at bar, it is not contended that the circuit court did not possess the power to restrict; but the complaint is, that the power was exercised unreasonably. It is a rule from which this court never departs, not to revise the action of inferior courts in matters within their discretion, except in case where it is manifest they have exercised their discretion unsoundly, and to the prejudice of the rights of the party complaining; upon this principle we are obliged to abstain from interference in this case. There is nothing in the circumstances of this case, so far as we can see, that rendered the limit of the court at all unreasonable or in anywise hurtful to the appellant."

State v. Linney, 52 Mo. 40, appears to have been an indictment for murder. Among the errors assigned was the limiting of the time for argument. It does not appear what time was allowed. But it is stated that it was contended that the court had no power to limit the time. This conclusion was held to be untenable, and the right of the court to limit the time for argument declared, and the judgment of the circuit court was affirmed. It was, however, said by WAGNER, J., delivering the opinion: "The power to limit and restrict the time might be abused, and a case might be presented in which this court would feel itself called upon to interfere."

State v. Williams, 69 Mo. 110, was a prosecution for murder. The court allowed defendant's counsel one hour for argument. This was assigned as error. The court, per HENRY, J., affirmed the judgment, and speaking of this assignment of error, said: ''Nor was it error to limit counsel in argument to the jury, or to require the defendant's counsel to close his argument at the expiration of the hour given him. This has more than once been decided to be a matter in the discretion of the court, and we see no reason to determine otherwise, when that discretion has not been abused.''

A careful examination of the cases in which the question in hand has undergone review by this court discloses that no case has ever heretofore been reversed by this court because of the limit set by the trial court for the argument to the jury, but that in every case the rule has been announced that such matters lie in the wise judicial discretion of the trial judge, and that his action in this regard would not be interfered with by this court, except in case of a clear abuse of such discretion, and the cases considered involved various limitations of time for argument varying from ten minutes in an action for damages for killing stock (Trice v. Railroad, 35 Mo. 416), to one hour in a prosecution for incest (State v. Baker, 136 Mo. 74), and to one hour in a prosecution for murder (State v. Williams, 69 Mo. 110). The action of the trial court in State v. Page, 21 Mo. 257, was very like the action of the trial court in the case at bar. In the Page case the trial court first allowed thirty minutes for argument, and upon counsel objecting to the allowance as insufficient, the trial court of its own motion reduced the time to fifteen minutes. In this case the trial court first allowed twenty minutes, and upon objection of the counsel that the time was insufficient, the court of its own motion reduced the time to fifteen minutes. This court refused to interfere with the discretion of the trial court in the Page case, where the time allowed was fifteen minutes, and it is not per-

ceivable why the same ruling should not obtain in this case where the time allowed was also fifteen minutes. If the reduction of the time from the time first allowed could be treated as evidence of *abuse of* discretion on the part of the trial judge, the abuse was much more flagrant in the Page case than it is in the case at bar, for there the reduction of time was fifty per cent, whereas here it was twenty-five per cent.

This is the state of the prior rulings upon the question in this State, and the clear policy of the law as so declared is that the discretion of the trial judge will not be interfered with except where there has been a clear abuse of such discretion. Under this rule the discretion of the trial judge should not be interfered with in this case. If ten minutes is a proper limit in an action for damages for the killing of stock, or if fifteen minutes is a proper limit in a prosecution for trespassing on school lands, or if twenty minutes is a proper limit in a suit upon a promissory note, or if one hour is a proper limit in a prosecution for incest or murder, it ought not to be said that fifteen minutes is such an improper limit in this case as evidences an abuse of discretion by the trial judge, and therefore the judgment, which is held to be otherwise correct, should not be reversed.

The case at bar is a very simple one. The contention of the plaintiff is that the car had slowed down so that its motion was imperceptible or had stopped, and that before she had time to alight the car was started with a jerk and she was thrown down. The contention of the defendant was that the plaintiff got off of the car while it was in motion and before it reached the street crossing, and that in consequence she fell down and that there was no jerk or starting forward of the car but that the car actually stopped at the proper place at the street crossing, and within a few feet beyond where the plaintiff got off. The issue was thus single and simple. The plaintiff herself was the only witness in her behalf. The defendant introduced five witnesses who supported its

contention. The jury heard the testimony. The law of the case was plain, and the instructions given at the request of the parties stated it in terms as explicit as counsel could express it and almost amounted in themselves to an argument of the case on the respective sides. It only remained for the counsel to tell the jury what they thought was the proper deduction to draw from the facts under the law. If there ever was a case where a limitation of fifteen minutes was proper, it is this case. If fifteen minutes was improper in this case and constitutes reversible error, it can only mean that fifteen minutes is improper in every case. Yet this court has said a limitation of fifteen minutes, and even of ten minutes, was proper in cases where the issues were much more complicated than are the issues in this case.

If fifteen minutes is improper where there is only a single issue of fact for the jury to pass upon, what should be said of one hour in a prosecution for incest or for murder? If fifteen minutes was improper in this case, where the jury heard the testimony and had been fully instructed, and where there was only a single question of fact, what should be said of the one-hour limit in the Kansas City Court of Appeals, and in the St. Louis Court of Appeals, or of the one hour and a half limit in this court, where the whole case is new matter to the court, and the counsel must not only state the facts, but point out the errors assigned and argue the law of the case? If fifteen minutes is improper where there is only a single question of fact involved, would it not follow that one hour would be improper when there were four questions of fact involved?

In short, if fifteen minutes is improper in this case, by what rule or guide must a trial court be governed in other cases? None is prescribed in this case and it is said none can be prescribed. What then will be the result? Manifestly trial courts will be afraid to fix any limit, or if they do, it will be assigned as error, and this court will be called on to review the discretion of the

trial court in every case where a limit is fixed by the trial court. Such a rule would seriously cripple the expeditious administration of the business of the trial courts, would belittle the authority and dignity of the trial judge, and would overwhelm this court with the decision of matters that for over eighty years have been confided to the trial courts, and as to which there has never been an abuse of the discretion vested in the trial judges. For these reasons I think it is perfectly safe to entrust this power to the trial courts and that this court should not interfere except where there has been a clear abuse of such discretion.

The rule that has heretofore prevailed in this State and which, I think, should be enforced in this case, is the rule that is established in nearly all of our sister States.

Yeldell v. State, 100 Ala. 26 (46 Am. St. Repts. 20), was a prosecution for assault with intent to murder. A limitation of the argument to the jury of fifteen minutes was upheld. In an exhaustive note to this case in the American State Reports many cases are reviewed wherein the trial courts had set a limit to the time for argument to the jury. A reference to a few of the adjudications of other States is both interesting and instructive. In Georgia a limitation of thirty minutes in a murder case was held improper. [Hunt v. State, 49 Ga. 255.] In North Carolina, a limit of one hour and a half in a murder case was held proper. [State v. Collins, 70 N. C. 241.] In Kentucky, a limit of five minutes in a larceny case, where there were three witnesses for the State and one for the defense, was held proper. [Williams v. Commonwealth, 82 Ky. 644.] In New York a limit of thirty minutes, in a prosecution for felonious assault, was held proper. [People v. Kelly, 94 N. Y. 526.] In Mississippi, a limit of thirty minutes, in a larceny case, was held proper. [Lee v. State, 51 Miss. 566.] In Tennessee, a limit of five minutes, in a civil case, was held proper. [Burson v.

Mahoney, 6 Baxt. 307.] In Kentucky a limit of twenty-five minutes, in a civil case, where twelve witnesses were examined, was held proper. [Railroad v. Earl's Admx., 22 S. W. 607.] In Colorado a limit of forty-five minutes in a civil case was held proper. [Sylvester v. Jerome, 34 Pac. 760.] In Indiana a limit of one hour and a half to the plaintiff and one hour to the defendant, in a suit for slander, was sustained. In Texas a limit of twenty-five minutes, in a prosecution for keeping a disorderly house, was held proper. [Mansfield v. State, 24 S. W. 901.]

On the other hand, a limit of one hour in a prosecution for arson, where twelve witnesses were examined and the evidence was circumstantial and conflicting, was held improper. [Wingo v. State, 62 Miss. 311.] So a limit of one hour in a robbery case, where twenty-four witnesses were examined and the trial occupied five days, was held improper. [People v. Green, 99 Cal. 564.] And a limit of twenty minutes in a case of assault with intent to kill where seventeen witnesses testified was held improper. [Jones v. Commonwealth, 87 Va. 63.] A limit of thirty minutes in a case for assault to commit murder, and where the trial lasted two days, was held improper. [People v. Labadie, 66 Mich. 702.] A limit of seventeen minutes in a criminal prosecution for adultery, where the two defendants were represented by separate counsel, was held improper. [McLean v. State, 32 Tex. Crim. Rep. 521.] Many other instances might be referred to on both sides of the question, but the foregoing are sufficient to illustrate the rule and the practice.

Manifestly, no fixed rule could be adopted that would fit all cases, and hence the wisdom of the principle that prevails almost everywhere, that the determination of the matter is for the judicial discretion of the trial judge, who heard the witnesses, saw all that occurred upon the trial, knew the condition of his docket, was familiar with the learning, facility of expression

and powers of speech of the counsel, and was therefore generally better able to do justice than an appellate court could do, and that to justify an appellate court to adjudge a trial court guilty of an abuse of that discretion, the case must be clear, cogent and convincing, in fact, sufficient to convict the trial judge of manifest prejudice, partiality or official misconduct.

The case at bar presents no such features, and the time allowed under the facts and circumstances of this case is not *per se* evidence of an abuse of judicial discretion. I therefore think the judgment of the circuit court should be affirmed. It is so ordered. *Burgess, Gantt* and *Fox, JJ.,* concur; *Robinson, C. J., Brace* and *Valliant, JJ.,* dissent.

## In Division One.

VALLIANT, J.—Plaintiff was a passenger on a street car on defendant's railway in St. Louis and received injuries to her person by falling while she was in the act of alighting. The petition alleges that when the car reached the point of the plaintiff's destination, in obedience to her signal, for the purpose of allowing her to alight, it either stopped or slowed down so as to be moving imperceptibly (plaintiff being unable to say which), whereupon she attempted to alight and while in the act of doing so the defendant's servants in charge of the car negligently caused or suffered it to move forward with increased motion, which caused the plaintiff to be thrown upon the street and suffer certain severe injuries. The answer was a general denial and a plea of contributory negligence, to which there was a reply.

The testimony on the part of the plaintiff tended to prove the cause of action as stated in her petition, and that on the part of the defendant tended to prove the contrary and to sustain the plea of contributory negligence.

There were four witnesses examined on the part of the plaintiff and five for the defendant. Their testimony, as reported, covers fifty-three pages in the bill of exceptions. The instructions given cover four closely written pages of manuscript.

The instructions given on behalf of the plaintiff were to the effect that if for the purpose of allowing the plaintiff to alight the car had been stopped or slowed down so that its motion was imperceptible and the plaintiff thereupon was in the act of alighting and while she was in that act and before she had a reasonable time in which to alight, the servants of defendant in charge of the car caused or suffered it to move forward with an increased motion, and thereby the plaintiff was thrown upon the street and injured, and that if the defendant's servants had exercised a high degree of care and skill such as careful and skillful railway operators would exercise under like circumstances they would have prevented such motion of the car, but that they neglected to do so, the plaintiff was entitled to recover.

The instructions for the defendant were to the effect that if the plaintiff suffered the injuries complained of in consequence of attempting to alight from the car while it was moving, under such circumstances as that a woman of ordinary prudence would not have so attempted, she was not entitled to recover.

Then the court of its own motion gave this instruction which is the only one complained of:

"The burden of proving the facts set out in these instructions as necessary to be proved in order to enable plaintiff to recover is upon the plaintiff—that is, the preponderance or greater weight of the testimony must be on the side of the plaintiff; and unless she has so proven them she is not entitled to recover. The burden of proving any negligence in the plaintiff is upon the defendant."

To the giving of which exception was taken.

The following which was one of the rules of practice of that court was enforced in this case:

"Rule 29. *Trial, Argument of Counsel.*—In cases tried before a jury the plaintiff shall have the privilege of opening and closing the argument; the opening argument to be made after the evidence is in, and after the instructions, if any, have been given. Should the plaintiff decline to make the opening argument, he will be considered as thereby waiving his privilege of closing the same, and shall not be allowed to do so, but the defendant shall, nevertheless, have the privilege of making his argument. Before the argument begins, the court will announce how much time will be allowed on each side for argument, each side being allowed the same length of time. The plaintiff may apportion the time allotted to him between his opening and closing argument, as he may choose; provided he shall not consume more than one-half of his time in his closing argument. In those cases in which the court decides that the defendant has the affirmative of the issues, he shall have the opening and closing of the argument in like manner, and under the same restrictions, as above laid down for the plaintiff. The court may in its discretion change the order of argument as above described, in a particular case, where the circumstances in the opinion of the court require it, and where it is so ordered before the argument begins. The court may in its discretion allow the argument in a particular case to extend beyond the allotted time if the circumstances in the opinion of the court render it proper to do so."

The court limited the arguments to fifteen minutes on each side, counsel for plaintiff asked longer time, but the court refused the request and the plaintiff excepted. The verdict and judgment were for the defendant, and plaintiff appealed.

I. Respondent presents the point that the abstract of appellant does not show that there was a final

judgment rendered or appeal allowed, and further that it does not show that there is a record of the filing of the bill of exceptions. The cause is not here, however, on the short form allowed by statute, but on the full record, and that record shows the final judgment, the order allowing the appeal, and the record entry of the filing of the bill of exceptions. It also contains the full bill of exceptions. The abstract contains a recital of all these facts and, accompanying as it does the full record, is sufficient.

II. Appellant assigns for error the giving of the instruction above quoted, which is to the effect that the burden was on the plaintiff to prove the facts set out in the instructions as necessary to entitle her to recover.

It is contended that this instruction throws upon the plaintiff the burden to prove that the sudden starting of the car after it had stopped, and while the plaintiff was alighting, could have been prevented by the exercise of the high degree of care that was incumbent on the carrier. We do not think the instruction susceptible of that construction. If the car had stopped or if it had slowed down to such a degree that it would have been reasonably prudent for the plaintiff to have attempted to alight, and she had so attempted, but while in that act the car had started forward with such a motion as to throw her down the defendant would have been liable for the result, unless it could show that such movement of the car could not have been prevented by the exercise of that degree of care which the carrier owed the passenger, and the burden of showing that fact would have been on the carrier. [Hutchinson on Carriers (2 Ed.), secs. 800-801; 3 Thompson on Neg., secs. 2754, 2759, 2760, 2770; Dougherty v. Railroad, 81 Mo. 325.] But there was no such question in this case. It was not asserted in any manner by the defendant that the alleged sudden starting of the car was a fact beyond its control; there was neither allegation nor

proof on that point.   The defense was a denial that the car so started and an assertion that it had not stopped as alleged, but was moving at a rate that rendered it dangerous for the plaintiff to attempt to alight as she did.   The effect of the instruction complained of was to throw the burden on the plaintiff to prove that the car stopped or that it slowed down to the degree alleged by the plaintiff and that a new impetus was given to it while she was in the act of alighting.   Those were the facts which the instruction required the plaintiff to prove and in that respect it was correct.   There was no necessity for the mention in the plaintiff's instructions of the degree of care to be exercised by the defendant in preventing the sudden starting of the car, for the reason that there was no claim by the defendant that the car started from a cause beyond its control.   If there had been  evidence of such a condition then the court would have qualified the instructions given at the instance of the plaintiff by saying in effect that the defendant was liable under the facts  stated  unless the jury should find from the evidence that the defendant's servants could not have prevented the starting of the car by the exercise of the highest degree of care devolving on the carriers.    But there was no such issue in this case.

There was no error in the instruction relating to the burden of proof.

III.   Appellant complains of the rule of court above quoted regulating the order of argument in jury trials and of the action of the court under that rule. The rule itself is a reasonable regulation and is within the power of the court to make.  In Blewett v. Railroad, 72 Mo. 583, this court said that the order of argument in such case was a matter to be regulated by the rules of court.   It is universally recognized that in debate he who has the affirmative of the question has the right to open and close.   This right as it affects one's own in-

terest.involves also a duty as it affects the action of the court or jury and the interest of his adversary.    He who has the affirmative of the issue, and who, therefore, has the right to close the argument, owes it as a duty as well to the tribunal, whose judgment he seeks to pursuade, as to his adversary, against whom he seeks the verdict, to make a fair presentation of his case in an opening argument after the evidence has been adduced, to the end that his adversary may know what he is to answer and the jury may fairly understand the questions of fact they are to decide.    The rule of court now under discussion seems to have been designed to enforce that order of procedure.    Its provision that the plaintiff shall not use more than half the time allotted to him in his closing argument is to induce him to use at least half of it in his opening argument.    We find no objection to the rule.

IV.    But appellant has a just cause to complain of the action of the court in limiting the time for argument in this case to fifteen minutes on each side.    The effect of that ruling was to allow the plaintiff only seven and a half minutes in which to make his closing argument. Whilst the rule commends itself to our sense of justice, yet, in order to promote the purpose for which it was designed, the court should allow a reasonable time to enable the plaintiff to present his case by argument to the jury both in opening and closing.    The limiting of the time for argument is a matter in the sound judicial discretion of the court, and an appellate court will hesitate to interfere with the exercise of that discretion. But when the appellate court is satisfied that that discretion has not been well exercised and that injustice has been done, it is its duty to reverse the judgment. It is impracticable to lay down any fixed rule as to the length of time the trial court should allow for argument; that is a matter addressed to the sound discretion of the trial court in the light of the circumstances of the particular case on trial.    We will not say that a court

would not in any case be justifiable in limiting the time for argument to fifteen minutes on a side, for in some cases that might be sufficient. But in this case a fair argument of the questions of fact, in the light of the conflicting evidence, could not be made within the time the court limited for that purpose. There were in all nine witnesses, whose testimony covers fifty-three pages of manuscript, and in which there was much conflict. Besides, there was some documentary evidence. The hearing of the evidence must have occupied several hours. The instructions were elaborate, ringing the changes on the various forms of the issues to be tried. Under the circumstances of this case the limiting of the time for the argument to fifteen minutes on a side was an unreasonable exercise of the power of the court in that respect, and for that reason the judgment ought to be reversed, the cause remanded and a new trial awarded.

*Brace, P. J.,* and *Robinson, J.,* concur; *Marshall, J.,* concurs in all except that he is of the opinion that under the facts of this case the limit of fifteen minutes for argument was not unreasonable and hence that the judgment should not be reversed on that account.

## In Banc.

PER CURIAM.—On the hearing in Banc, paragraphs marked I, II, III in the foregoing opinion by *Valliant, J.,* in Division No. 1, are concurred in by all the judges; paragraph marked IV is concurred in by *Robinson, C. J., Brace* and *Valliant, JJ.,* but is not concurred in by *Marshall, Gantt, Fox* and *Burgess, JJ.,* who, on this point, concur in the opinion by *Marshall, J.*