## THE STATE v. BAKER, *Appellant.*

Division Two, November 20, 1896.

1. **Criminal Law:** RAPE: STATUTE. Carnally and unlawfully knowing a female under the age of fourteen years constitutes the crime of rape under Revised Statutes, section 3480, irrespective of the element of force.

2. **Criminal Practice:** INDICTMENT: INSTRUCTION. A refusal by the court to instruct that the indictment is a mere formal charge and is not any evidence of guilt is not reversible error.

3. ——: REASONABLE DOUBT: INSTRUCTION. Where the court has fully instructed the jury on the question of reasonable doubt and the presumption of innocence, it is not error to refuse similar instructions asked by the defendant.

4. ——: RAPE: INSTRUCTION. On a trial for rape the evidence showed that the prosecuting witness was under the age of fourteen years; that she was ruined by her father with whom she lived without any female companion; that he had threatened to kill her if she exposed him. Her evidence was corroborated. *Held,* that under the circumstances the court properly refused to instruct the jury to take the failure of the prosecutrix to make an early disclosure of her abuse "into consideration with all the other evidence in determining the question of the guilt or innocence of the accused."

5. ——: WITNESS, IMPEACHMENT OF. Where a witness unequivocally admits that a written statement was made by her and also testified that it was executed under duress and that it was false, such statement is not admissible for the purpose of impeaching her.

6. ——: EVIDENCE: WAIVER. Where in a criminal case the defendant withdraws all objection to certain evidence and invites its introduction he can not afterwards complain of its admission as error.

7. ———: ARGUMENT OF COUNSEL: LIMITING TIME. Where the issue in
a criminal case is simple and the evidence is in no sense complicated
or voluminous, the court does not abuse its discretion in limiting the
argument of counsel to an hour on a side.

*Appeal from Moniteau Circuit Court.*—HON. D. W.
SHACKLEFORD, Judge.
AFFIRMED.

*C. M. Gordon* and *J. W. Moore* for appellant.

(1)  The evidence admitted by the court, tending
to show other offenses or misconduct of defendant,
should have been rejected, or stricken out on defend-
ant's motion, when offered. *State v. Daubert*, 42 Mo.
238. The rule sometimes adopted in civil cases to
exclude by instructions evidence improperly admitted
during the trial, and thus avoiding the error of its
admission, has never prevailed in this state in crim-
inal cases, nor is it approved in the text-books and
leading cases cited therein. *State v. Mix*, 15 Mo. 153;
*State v. Goetz*, 34 Mo. 85; *State v. Harris*, 73 Mo.
287; *State v. Tabor*, 95 Mo. 585; *State v. Reavis*,
71 Mo. 420; *State v. Turner*, 76 Mo. 350. (2) It was
the duty of the court to exclude improper evidence
when offered, whether the objection was general or
special. *State v. O'Conner*, 65 Mo. 374; *State v. Meyer*,
99 Mo. 107; *State v. Patrick*, 107 Mo. 147. (3) The
only exception to this doctrine is in those cases where
fraud is the essence of the offense, to show guilty
knowledge. *State v. Meyers*, 82 Mo. 558. (4) There
was manifest error in the refusal of instructions: *First.*
The court erred in refusing the third instruction offered
by defendant. The legal effect of contradictory state-
ments of a witness is a proper subject for the consider-
ation of the jury. In this case, the necessity of such
instructions is apparent. *Second.* The fifth instruction
asked for by defendant should have been given. *State*

*v. Musick*, 101 Mo. 260. The character of the offense, the relationship of the parties, and the circumstances appearing in evidence, required a cautionary instruction of this kind.     *Third.* The court erred in refusing instruction number 7, asked for by defendant, as to the indictment being a mere formal charge.    It is the universal practice of trial courts to give this instruction. It should be held error to refuse it.    *State v. Brown*, 115 Mo. 409; *State v. Moxley*, 102 Mo. 374.    *Fourth.* The court erred in refusing the first and the ninth instructions asked for by defendant, as to the delay of the prosecuting witness in making the charge of rape, against the defendant, and her continuing to live with him for months and years, on friendly terms, after the alleged commission of the offense finally charged.  She was not a mere child all this time, and according to her own story she lived in peace with him for nearly two years after the alleged improper relations between them ceased, and she says that during this time she no longer feared him.    Such silence was not compulsory, nor was it caused by any shame of exposure, as her subsequent conduct attests. *State v. Wilson*, 91 Mo. 410; *State v. Witten*, 100 Mo. 525; *State v. Patrick*, 107 Mo. 147, and citations.    (5)  The court erred repeatedly in the admission and exclusion of evidence, as an inspection of the record will show.    (6)  The limit of the argument to one hour on the part of defendant's attorneys was unreasonable.

*R. F. Walker*, attorney general, and *J. W. Hunter*, prosecuting attorney, for the state.

(1)  The instructions given by the court of its own motion fully and fairly stated the law of the case.    (2) There was no error in refusing instructions 1 and 9 asked by defendant.    In cases of rape by forcibly rav-

ishing, such instructions would be proper, but such is not the case where a child under fourteen years of age is carnally known. *State v. Wilcox*, 111 Mo. 569. (3) There was no error in refusing to permit defendant to read in evidence the affidavit of witness Minnie Baker. It was obtained by duress. Besides, she admitted its execution, and hence it was not competent for impeaching purposes.

GANTT, P. J.—The defendant stands indicted by the grand jury of Moniteau county for the unlawful carnal knowledge of his daughter who was under the age of fourteen years at the time. He was duly served with a copy, waived the forty-eight hours which the statute then gave him and was duly arraigned and entered his plea of "not guilty." He was tried and convicted and his punishment assessed at twenty years in the penitentiary.

The facts brought to light by the testimony are that the defendant was a widower in 1890 with five children. The oldest daughter was married and living in Stoddard county; two sons, John and James, and two daughters, Amanda and Minnie, remained with their father. This family of five all lived in one room in a log hut. They cooked and slept in this room about thirteeen and one half feet square. They had two beds. The two daughters occupied one and the father and two sons the other. During the year 1890 Amanda died. After her death Minnie, the remaining daughter, about thirteen years old, was the only female about the house. The uncontradicted evidence is that on various occasions the defendant had this daughter, who was large for her age, sleep in his bed with him. Thomas Luster and his wife and Woodard and perhaps others testified to this and indeed defendant admitted it on the trial in his evidence.

Minnie Baker, the prosecutrix, testified that after her sister 'Manda's death she was alone one day in the house and the defendant came in, took her in his arms and placed her on the bed and had carnal connection with her, telling her other men did the same thing with their daughters.   She says he threatened to kill her if she ever told it; that she was afraid to tell it.   She testified further that he repeated this conduct on different occasions during the next two years until 1892. The girl finally left home and went to Mr. Britton's and stayed about ten days and while there she disclosed to two ladies of the family her aversion to returning to her home because of her father's brutal treatment.   While there he came after her and she refused to go with him and he was heard to tell her he would not hurt her if she would go with him and she stated she would rather die than go back with him.   However, yielding to his insistence, she went.

It soon began to be noised around that defendant was guilty of incest or rape, and following close upon the report Minnie came to California and went to the office of Mr. Gordon, an attorney of that city, and made a detailed denial under oath of all the damaging charges that had been bruited about her father.   She also got on a horse and started around the neighborhood to deny them. . She testifies that her father sent her to Mr. Gordon to make the affidavit and ordered her to go around and tell that he was innocent; that he compelled her to do so.  In the meantime her father went to the prosecuting atttorney to begin a prosecution against his son-in-law Cash but it seems the prosecuting attorney thought he was endeavoring to forestall a prosecution of himself.   The daughter went again to Mr. Gordon and told him that her affidavit was false; that she had been compelled by her father to make it; that in fact he was guilty.   She went to the jail and

the defendant asked her how it looked to see her father in jail, and she was heard by the sheriff to tell him that it was his own fault; that he knew he was guilty, to which he made no reply.

Perhaps the most significant corroboratory evidence was that of James Baker, the son of defendant, a young man about nineteen years of age. He was called as a witness and testified in chief to kind treatment by his father of his children; that he knew nothing tending to convict defendant of the crime charged. Upon cross-examination he broke down and admitted that for two years he had suspected it and had been on the watch; that he had testified before the grand jury that if his father was acquitted he would leave the county; that he knew he was guilty; that his father had threatened to knock him in the head if he told anything.

The defendant had only lived in the county about five years and the evidence as to good character was very slight and that of an unsavory reputation rather predominated.

The defendant's theory was that it was a conspiracy among his children to get his property. His property consisted of five horses, one of which was mortgaged, and he had debts which would have about exhausted all but his exemptions. He drew a pension from the United States of $12 a month.

It is incredible that his children would have made a charge so infamous for such a pittance. Loth as we are to believe a charge like this, it can not be said this one is not supported by positive and consistent evidence and that the jury had not a substantial basis for their verdict.

I. The instructions of the court fairly stated the law. The element of force was not essential to constitute the intercourse of defendant with his daughter,

who was then under fourteen years, a crime under the statute. Carnally aud unlawfully knowing a female child under fourteen years of age is made rape by our statutes. Sec. 3480, R. S. 1889; *State v. Wilcox*, 111 Mo. 569. Her consent to such unhallowed commerce would have constituted no defense under this statute. The court fully instructed on the presumption of innocence, reasonable doubt, the right of defendant to testify in his own behalf. All the instructions have been often approved by this court.

II. The defendant complains that the court erred in refusing an instruction asked by defendant to the effect that the indictment was a mere formal charge and not any evidence of guilt. Such an instruction might well have been given, but its omission does not constitute reversible error. *State v. Brown*, 115 Mo. 409; *State v. Pratt*, 121 Mo. 566.

III. Inasmuch as the court had fully instructed on reasonable doubt and the presumption of innocence there was no error in refusing defendant's fifth instruction in these words:

"The jury are instructed that a probability of defendant's guilt as charged in the indictment is not sufficient to warrant a conviction nor is it sufficient that the greater weight or preponderance of the evidence supports the allegation of the indictment nor is it sufficient that upon the doctrine of chance it is more reasonable that the defendant is guilty. To warrant a conviction of the defendant he must be proven to be guilty so clearly and conclusively that there is no reasonable theory upon which he can be innocent when all the evidence is considered together."

After all this elaboration it amounts to no more than the court's instructions that the law presumed the innocence of the defendant and before he could be convicted the state was bound to establish his guilt of the

crime charged beyond a reasonable doubt,—an instruction easily comprehended by every ordinary juror.

IV.   Again it is insisted that the court erred in refusing the defendant's first instruction which is in these words:

"The jury are instructed that if they believe from the evidence that at the time the offense is alleged to have been committed the witness, Minnie M. Baker, made no outcry and did not immediately complain of the offense to others but concealed it for a considerable length of time afterward, then the jury should take this circumstance into consideration with all the other evidence in determining the question of the guilt or innocence of the accused and whether the crime was in fact committed or not."

It will be observed that the learned counsel for defendant do not claim that the failure of the daughter to make an outcry and an accusation against her father raises any presumption of his innocence but they simply assert that the jury should have been instructed to consider it as a circumstance along with all the other evidence.

Certainly no presumption ought to have been indulged against the evidence of this girl, under the circumstances, because she did not sooner make complaint.   She had no mother or sister near her; she was very young and was wholly under the domination of her father, whom she charges with her ruin; she testifies that he threatened to kill her if she told on him; she is corroborated by the threats made against her brother if he divulged anything.   It does not appear that she had any female companions.

This case is wholly unlike the *Patrick* case, 107 Mo. 147.   In that case the female claimed to have been outraged by a neighbor.   She was under the protection of

VOL. 136 mo—6

her husband, she made no complaint, and her story was not corroborated by any of the physical facts; she rode with her alleged ravisher to an adjoining county to her relations and made no charge for a week after the alleged ravishing. I concurred in the opinion of Judge SHERWOOD in that case that her statements made a week after. the occurrence under those circumstances were wholly inadmissible and there was no evidence to corroborate her story. In this case the prosecutrix is under fourteen years of age. The defendant is charged with raping her and force is not an essential ingredient in the commission of the crime. The girl's consent could not lessen his crime, hence her failure to make an outcry is wholly immaterial. But her failure to make a complaint under the circumstances would not have justified the instruction asked. The instruction would have been an unjustifiable comment on her evidence. Her explanation was entirely consistent with honesty and truthfulness. Terrorized as she was by her natural protector, with no mother or sister to whom she could disclose her condition, no unfavorable inference should be drawn against her evidence because she did not sooner disclose the infamy of her only parent.

The theory of defendant that she was in a conspiracy to obtain his almost worthless personal property is utterly baseless and incredible.

The jury had both the daughter and father before them. It was their province to judge of the credibility of each and they believed the daughter who was corroborated by various circumstances. They heard her explanation of her delay in making her complaint and were satisfied it was reasonable and so was the trial court. No error was committed under the facts of this case in declining to give the instruction. *State v. Wilcox*, 111 Mo. 569; *Higgins v. People*, 58 N. Y. 377; *State v. Byrne*, 47 Con. 465; *State v. Knapp*, 45

N. H. 148; *State v. Patrick*, 107 Mo. 147; *People v. O'Sullivan*, 104 N. Y. 481.

V.    There was no error in excluding the written statement of Minnie Baker.  She was not a party to the prosecution and moreover on the witness stand she unequivocally admitted making the affidavit and testified it was made in obedience to her father but was false. It could not have contradicted her because she admitted it fully.    *Sullivan v. Railroad*, 133 Mo. 1; *Peck v. Ritchey*, 66 Mo. 114.

VI.    The evidence as to a similar offense on the married daughter was too remote and should have been excluded and doubtless would have been had not defendant withdrawn all objections and invited and courted the evidence.    Having been so confident that the evidence would neutralize itself then, counsel can not now be heard to say it was error.

Other minor errors are suggested but the foregoing embrace the material questions mooted in the argument and brief of defendant's counsel—save and except the complaint that in limiting counsel to an hour on a side the court was guilty of oppression.

The question of fact involved was exceedingly simple and the testimony in no sense complicated or voluminous.    There is nothing to indicate that an hour was not ample to thoroughly discuss the matter. on a side.    Ordinarily it is in the discretion of the court to limit argument even in capital cases like this. *State v. Page*, 21 Mo. 257; *State v. Linney*, 52 Mo. 40; *State v. Williams*, 69 Mo. 110; 2 Encyclopedia of Pl. & Practice, 703.    We do not think the court exercised an unwise discretion in limiting the argument.    The judgment is affirmed.    SHERWOOD and BURGESS, JJ., concur.