THE STATE v. ERNEST C. RICHARDSON, Appellant.—163 S. W. (2d) 956.

Division Two, July 28, 1942.

1104

*Roy McKittrick*, Attorney General, and *Arthur O'Keefe*, Assistant Attorney General, for respondent.

ELLISON, J.—The appellant was convicted in the circuit court of the City of St. Louis of raping his fourteen-year-old daughter in violation of Sec. 4393, R. S. 1939, Sec. 3999, Mo. Stat. Ann., p. 2801, and his punishment assessed by the jury at imprisonment in the penitentiary for 30 years. The State waived the death penalty and the jury were informed of that fact in an instruction. He has filed no brief in this court. There were 29 assignments of error in his motion for new trial. First contending there was no substantial evidence to support the verdict, seven of the remaining

assignments complain of the conduct of the fourteen-year-old prosecutrix in weeping while on the witness stand, and another of limitation of his counsel's voir dire examination of the jury panel. The other assignments are directed to the reception and exclusion of testimony and refusal to strike out the same and admonish the witness; improper argument; and the giving and refusal of instructions. The case was tried below two years ago and submitted here January 6, 1942.

We shall not set out the revolting details of the evidence. The appellant was 44 years old at the time of the commission of the alleged rape upon which the indictment is based and his wife was 35. ·She had been a cripple from birth. They had been married for 15 years and had three children: the prosecutrix, 14 years old, and two sons, one 10 and the other 6 years old. When working at all appellant was employed by the W. P. A. He had been convicted of. larceny, when a child he said, and in later life of carrying concealed weapons. The family had lived in comparative squalor for the last 12 years in St. Louis. The father, mother and daughter appear to be rather subnormal mentally, but exhibited a certain low order of cunning in fencing with counsel on examination. The direct, cross, and two redirect and cross-examinations of the prosecutrix cover 128 pages of the printed record. The cross-examination of the mother covers 52 pages. Without seeing the witnesses, it is a difficult case for an appellate court on the facts.

·The prosecutrix' story was that when she was about seven years old her father began to violate her person and after about a year had sexual intercourse with her. This occurred mostly in the kitchen early in the morning. He would get up early and have the daughter arise at the same time to prepare his breakfast, the mother being unable to do so because of her infirmities. The appellant would make a pallet on the kitchen floor where the sexual acts occurred. On cross-examination he admitted that his overcoat, a blanket or comfort was spread on the floor two or three times and that she lay on it;·but asserted this was because the child was cold until the kitchen had been warmed by the stove. He absolutely denied any improper acts. According to the prosecutrix' testimony they continued weekly through the seven years; and appellant threatened her with physical violence if she disclosed them. During these years she attended the public school and associated with other children. The mother testified the appellant's display of affection for the prosecutrix in fervor of speech and action was beyond that which a father would ordinarily show for a daughter; and that he kept track of her menstrual periods by examination of her laundry. The mother's suspicion was aroused but she said nothing.

In the latter part of April, 1939, things came to a crisis. Appellant had whipped the daughter from time to time theretofore with his

leather belt, but on the occasion last referred to he whipped her violently, tried to choke her, and attempted to push her in front of a moving automobile. This testimony is not very clear, but it seems the mother was at church at the time and the prosecutrix wanted to go there. The mother testified appellant came to the church and raised a disturbance. At any rate the police were later called. Appellant was arrested on a charge of incest, at the home of his mother. The prosecutrix told her mother about her relations with appellant.

The mother testified that before appellant was arrested she told him of the prosecutrix' confession and "he didn't deny it." Appellant was held in custody for a month or two pending a preliminary hearing. On a certain occasion during the intervening time the prosecutrix and her mother went to the home of her grandmother, appellant's mother, and while there the prosecutrix wrote a note to Mr. Hough, appellant's attorney, retracting the charge. The mother also wrote and mailed a note to Mr. Hough, explaining the prosecutrix at breakfast had broken down and wept, saying her conscience hurt her because she had lied against her father. The mother, the prosecutrix and her aunt, Mrs. Flora Richardson, wife of appellant's brother Arthur, went to Mr. Hough's office, and the prosecutrix there delivered to him her written retraction. At the preliminary hearing Mr. Hough produced it and the Assistant Circuit Attorney dismissed the proceeding. The prosecutrix was placed in the House of Detention and remained there about eight days. Then she was transferred to an institution called in the record the "Epworth School," at which she resided until sometime in the fall, separated from her parents except that they could call on her. Then she repudiated the retraction and the facts were submitted to a grand jury, which returned on December 1, 1939, an indictment on which this prosecution is based, charging statutory rape on or about April 26, 1939.

There is much testimony pro and con on how the note of retraction came to be written and why it was repudiated. The prosecutrix testified it was coerced by her aunt Flora, who lived just across the hall from the grandmother and helped do the latter's housework. There is no dispute about the fact that the note emanated from that environment, either at the apartment of the grandmother or that of the aunt. The prosecutrix testified that while she and her mother and two younger brothers were at the grandmother's, the aunt produced a pencil and paper, invited her into her own kitchen, and forced her to write the note, telling her what to put in it. This the aunt denied in toto, saying she was in her own apartment most of the time and knew nothing about the note. Appellant's brother Herbert testified he was present at the family gathering above mentioned; that the prosecutrix came in and asked for a pencil and paper, which were given to her, and then went out. He also didn't know anything about the note being written. The prosecutrix' mother testified she

didn't learn of the note until the day after it was written. She talked with her daughter and urged her to tell the truth whatever it was. That night she wrote and mailed her own note to Mr. Hough.

The next morning the mother, the prosecutrix and her aunt Flora went to Mr. Hough's office, which would be the second day after the prosecutrix' note was written. Mr. Hough was also attorney in a damage suit for appellant's brother Arthur, the husband of the aunt, Flora. The latter testified she took the prosecutrix and her mother to Mr. Hough's office because the mother asked her to do so, solely for the purpose of introducing them. From then on she was a mere bystander in the conversation. But she testified as to what was said and so did Mr. Hough. In the interview at the law office the prosecutrix elaborated on the note, stating she had been provoked into making the charge against appellant because she was mad at him for whipping her. She said a schoolgirl friend suggested she charge her father with raping her; but that instead she had been raped on three separate occasions by three several "beggermen" in the alley. It was also developed ▮▮▮ that the prosecutrix testified at appellant's preliminary hearing and there said she was angry at her father because he wouldn't let her go places and had whipped her for stealing some money and spending it on a punch board. The prosecutrix' mother admitted statements similar to the foregoing had been made by the prosecutrix, but attributed them to the aunt's machinations.

Appellant's theory was that the prosecutrix' repudiation of her retraction was instigated by her mother, who had separated from the appellant that October and quarrelled with him over the family furniture. The mother thereafter roomed with a Mrs. Black. Appellant's counsel charged the latter with complicity in procuring the prosecution and referred to her as "this lady, old beast lady." Mrs. Black was not called to testify by either side. But a witness named Nora Oliver was produced by appellant who testified she was a masseuse; that both Mrs. Black and the prosecutrix' mother were among her patients, the former having received 168 treatments and the latter 62; and that these two women frequently talked about appellant in her presence. The witness said they wrote lies to Miss Hunt, Juvenile Probation Officer, about "Ernest"—the appellant—and Mrs. Black said to the mother: "We have got to get something on Ernest Richardson before we can have him arrested again. You know we can't go up there—he has been acquitted of this charge, and if we can get something on him, why then get him arrested; then we can push this case again, rebring this case up, if we can get Leona (the prosecutrix) to tell that her Aunt Flora changed the story." This witness Nora Oliver further said she and her husband once drove Mrs. Black and the mother to the Epworth Home where the prosecutrix was staying; and that Mrs. Black told the prosecutrix to stick to the story

she had first told, and to say her aunt Flora had caused her to make the retraction.

Mrs. Oliver also said Mrs. Black and the prosecutrix' mother both had a purpose in seeking to get appellant convicted. It was because "Mrs. Black and her husband were separated and she was wanting to get a boy friend, and Mrs. Richardson has got one also in view." The witness refused to elaborate on this accusation, and to explain why appellant's conviction would help Mrs. Black in securing a divorce from her own husband and getting a boy friend. She also said Mrs. Black had appellant come to her home to eat so he could be charged with non-support by his wife, the prosecutrix' mother. There are other reasons besides these fanciful stories for doubting the credibility of this witness. She said she had never told anyone what her testimony would be before she was put on the witness stand.

On the other hand the prosecutrix' mother testified that after the preliminary hearing she first learned the prosecutrix was going to revert to her original story about two weeks after appellant had visited the prosecutrix at the Epworth School. The daughter told the mother and the mother then told appellant of the daughter's intention. Again the appellant didn't deny the crime. But he said he was going to get the prosecutrix out of the Epworth School by having another man steal her whence she would be taken to Illinois. Appellant asked the mother to stay in St. Louis and permit the prosecutrix to keep house for him. The mother's letter and the prosecutrix' note of retraction were not produced in evidence. Mr. Hough testified the Assistant Circuit Attorney, Mr. Motherway, asked him for them to use in the Juvenile Court; and that he (Hough) gave them to his secretary to send to that court and had never seen them since. Mr. Motherway admitted he did ask Mr. Hough for the letters for the purpose of placing them in the case file to show why the prosecutrix had been dismissed; but denied he wanted them for the Juvenile Court. Miss Hunt, Juvenile Probation Officer, testified the letters were never received by her. There were 22 probation officers, but she was the one in charge of the case or investigation of the prosecutrix, and the letters would have been referred to her if they had been received by the Juvenile Court.

There can be no question about the fact that on the foregoing evidence the State made a case for the jury. Considering the apparent intellectual and moral level of the *tragoediae personae,* we cannot say the testimony is inherently incredible. [State v. Gregory, 339 Mo. 133, 144, 96 S. W. (2d) 47, 53.] The prosecutrix has twice changed her story. If she had falsely accused her father the enormity of it should have been apparent to her after she had entered the calmer and more wholesome surroundings at the Epworth School. The Circuit Attorney's office has clearly shown a disposition to be cautious and fair. After the first charge ■ was dismissed and the

prosecutrix readopted her original story, the facts were submitted to a grand jury, and then to a circuit judge and jury. We feel we, as an appellate court, cannot interfere on the ground that there is no substantial evidence to support the verdict of guilty. [See two similar cases: State v. Wilcox, 111 Mo. 569, 20 S. W. 314; State v. Baker, 136 Mo. 74, 37 S. W. 810.]

During the voir dire examination the trial court stopped appellant's counsel when he said he assumed the jury would be instructed that they could consider the time elapsed between the alleged rape and the disclosure thereof by the prosecutrix, as bearing on her credibility. Complaint is made of that ruling, but there was no error in it. Counsel had no right to tell the members of the panel what he thought the court would instruct on the law, or how they should be instructed. [State v. Mozier (Mo. Div. 2), 102 S. W. (2d) 620, 624(8).] Whether appellant was entitled to such an instruction will be considered later.

Thereafter the mother was permitted to testify that the prosecutrix complained to her about the rape charged in the indictment and the antecedent rapes, shortly after the former occurred. She gave the details of the conversation. Appellant objected that the testimony was incompetent and hearsay, and renews that objection here. The proof of the antecedent rapes was not incompetent. [State v. King, 342 Mo. 975, 987(8), 119 S. W. (2d) 277, 283 (10).] If the *details* of the conversation were inadmissible [State v. Robinson (Mo. Div. 2), 106 S. W. (2d) 425, 427(4)] appellant's counsel intentionally waived the point by interposing another objection that "the conversation being asked for should be detailed, and not the conclusions of the witness." So as the record stands the question narrows down to whether the mother's story of the daughter's confession was hearsay in any event and wholly inadmissible.

We think the mother's testimony was competent for two reasons. First, it came in after the prosecutrix had been impeached on cross-examination by her admission that she had retracted the original charge against her father several months after it was made, and then later repudiated the retraction and reasserted his guilt, this being the basis for the instant rape prosecution. In that cross-examination appellant's counsel sought to elicit the further admission that she had been induced by her mother and a Mrs. Black to revive the criminal charge; and did obtain an admission from her that these two women had coached her during the trial on the testimony she was giving, in the sense that they urged her not to forget to tell certain facts. In these circumstances the mother's testimony concerning the prosecutrix' original complaint—consistent with her testimony at the trial—was admissible (even in detail) to rehabilitate the prosecutrix after she had been impeached by proof of her prior inconsistent retraction; and to sustain her against the charge of "recent contrivance"—that is, of fabricating the trial charge against her father, with the aid of her

mother and Mrs. Black. [4 Wigmore on Evidence (3 Ed.), sec. 1129, p. 205, secs. 1137, 1138, p. 227; State v. Tippett, 317 Mo. 319, 324, 296 S. W. 132, 134(1, 2).]

Secondly, while evidence of such prior, unsworn, extra-judicial complaints by the prosecutrix outside the res gestae would ordinarily be hearsay, an exception to that rule is universally allowed in prosecutions for rape of a woman over the age of consent, and evidence of the fact of complaint is received on the theory that womanly instinct prompts the outraged female to make outcry and complaint. The evidence is not accepted as independent proof of the crime, but only in corroboration of the prosecutrix by negativing consent.[1] And while nonconsent is not *legally* essential in prosecutions for rape of a female under the statutory age of consent (as here) and therefore evidence of such complaints is held immaterial in some jurisdictions;[2] yet in this State the testimony is admitted where there is further evidence that the ravishment was *in fact* accomplished by force,[3] to corroborate the prosecutrix on that issue as in common ▮▮▮ law cases. Indeed, there are two Missouri decisions in which the testimony was held admissible without reference to the presence or absence of force.[4]

But on either theory the mother's testimony concerning the prosecutrix' complaint was competent in the instant case. For while there was no testimony that physical force was used in the perpetration of the rape of April 26, 1939 charged in the indictment (there was such evidence as to some of the antecedent rapes) nevertheless the proof showed it was accomplished under the compulsion of long continued parental duress, which constructively amounted to force. [52 C. J., sec. 32, p. 1024.] And the delay in making complaint of the antecedent rapes is excusable (if any excuse is needed) because of parental intimidation and the prosecutrix' immaturity, mentality and environment. [42 C. J., sec. 93, p. 1069; State v. Wilcox, supra, 111 Mo. l. c. 574-5, 20 S. W. l. c. 316; State v. Baker, supra, 136 Mo. l. c. 81, 37 S. W. l. c. 811-2; State v. Bowman, supra, 278 Mo. l. c. 497, 213 S. W. l. c. 65(2).]

Following the admission of the above testimony, appellant later requested three cautionary instructions; C, D, and E, such as

---

[1] 3 Russell on Crimes (Internat. Ed., 1896), pp. 232-234; 1 Roscoe's Crim. Evid. (8 Ed.), p. 41; 2 id., p. 1123; 3 Greenleaf on Evid. (16 Ed.), sec. 213, p. 210; 1 Wharton, Crim. Law (12 Ed.), secs. 725, 726, pp. 980, 983; Underhill's Crim. Evid. (3 Ed.), sec. 612, p. 845; 22 R. C. L., secs. 47, 48, 51, pp. 1212, 1213, 1218; 52 C. J., secs. 88, 90, 92, pp. 1063, 1068.

[2] Underhill's Crim. Evid. (3 Ed.), sec. 610, p. 844; 4 Wigmore on Evid. (3 Ed.), sec. 1133, p. 223; 52 C. J., sec. 93, p. 1069.

[3] State v. Palmberg, 199 Mo. 233, 254, 97 S. W. 566, 572(8), 116 Am. St. Rep. 476; State v. Hammontree, 177 S. W. 367, 369(4); State v. Bowman, 278 Mo. 492, 497-8, 213 S. W. 64, 65-66(2).

[4] State v. Conrad, 322 Mo. 246, 252, 14 S. W. (2d) 608, 610 (4, 5); State v. Robinson, supra (Mo. Div. 2), 106 S. W. (2d) 425, 427(4).

his counsel had forecast in his opening statement, that the jury might consider delay in making complaint after "the alleged rape," as bearing on the prosecutrix' credibility. These were refused and error is assigned on that ground. In prosecutions for forcible rape of a woman over the statutory age of consent, the giving of such an instruction in correct form is proper, State v. Taylor, 320 Mo. 417, 431(b), 8 S. W. (2d) 29, 35(21); State v. Palmer, 344 Mo. 1063, 1066-7, 130 S. W. (2d) 599, 601(5); and the refusal or modification thereof had been held prejudicial error. [Champagne v. Hamey, 189 Mo. 709, 722-5, 88 S. W. 92, 95-7.] On the other hand, it is ruled in numerous cases that the defendant is not entitled to an instruction of that character in prosecutions for statutory rape of a female under the age of consent, even though there be evidence that the rape actually was accomplished by force, and the facts of prompt complaint or delay in complaint are proven and open to comment by counsel in argument. [State v. Palmberg, supra, 199 Mo. 1. c. 254, 97 S. W. 1. c. 572(8), 116 Am. St. Rep. 476; State v. Hammontree, supra, 177 S. W. 1. c. 369 (3, 4); State v. Bowman, supra, 278 Mo. l. c. 497-8, 213 S. W. 1. c. 65-6(2); State v. Gruber (Mo. Div. 2), 285 S. W. 426, 428(10); State v. Hersh (Mo. Div. 2), 296 S. W. 433, 436(13); State v. Shelby, 333 Mo. 610, 616 (3), 62 S. W. (2d) 721, 725(3).]

The Shelby case just cited says "that, as neither consent, nor the want of it, nor force are elements of the offense, it makes no difference, in law, whether the prosecuting witness made timely complaint, or whether she ever made complaint at all, and, therefore, instructions of the kind in question are properly refused." The Gruber case declares they would be "improper." These and the others of the six cases cited at the end of the preceding paragraph have sometimes been taken to mean that evidence of failure to complaint is *wholly immaterial* in a statutory rape prosecution, as stated in Underhill's Crim. Evid. (3 Ed.), sec. 619, p. 844, supra, and the other citations therewith. But that interpretation is incorrect. All our Missouri cases agree where force is used proof of timely complaint is competent corroborative evidence thereof. Hence they must be accepted as conceding that failure to complain has a contrary significance. It has been expressly so held. [52 C. J., sec. 93, p. 1069; State v. Bowman, supra, 278 Mo. 1. c. 497, 213 S. W. 1. c. 65(2); State v. Palmer, supra, 344 Mo. 1. c. 1066, 130 S. W. (2d) 1. c. 600(4).] It will not do to say that proof of timely complaint is competent, *notwithstanding* the statute eliminates force and nonconsent as elements of the crime; but that *because* of the statute proof of failure to complain is incompetent. That would amount to enforcing the statute against the defendant but not against the State.

The truth is that where proof of the one is or would be competent in a given case, proof of the other is also. What the foregoing line

of decisions and the earlier ones on rape of a female over the age of consent really hold is, that the cautionary instruction may or should be given in a common law rape case (brought under the second part of Sec. 4393, supra), because there force and nonconsent are essential, ultimate elements of the crime; whereas in prosecutions for rape of a female under the statutory age of consent, proof of complaint vel non is merely corroborative or discrediting evidence on force and nonconsent as *collateral* issues, and therefore the instruction should not be given. State v. Bowman, supra, 278 Mo. 1. c. 497, 213 S. W. 1. c. 65(2), declares it would be a *comment* upon the prosecutrix' testimony. This decision further explains that in view of the "maze of exceptions" necessarily allowed where the immaturity, mentality and environment of females variably affect the probative value of their prior statements or silence as evidence, no fixed rule for instructing the jury can be formulated that would be applicable to all cases within the class. The statute has therefore fixed an arbitrary age, and as a result the evidence in cases below that age goes in for whatever it is worth, but neither side is entitled to an instruction on it.

Nevertheless the question occasionally recurs, as it has here. Thus, in State v. Davis (Mo. Div. 2), 190 S. W. 297, 298 (4), the State's principal instruction in defining the crime declared that the prosecutrix' failure to make outcry or complaint was not a defense. The opinion held that since there was substantial evidence of such failure, the instruction should not have been given without including an explanation of the purposes for which the evidence was material. And in State v. Barnes, 325 Mo. 545, 552-3 (8), 29 S. W. (2d) 156, 159 (11), where the State's instructions three times declared force was not a necessary element of the crime, this court held it unnecessary to determine the defendant's right to a cautionary instruction on the effect of the prosecutrix' failure to make outcry or timely complaint, because he did not ask for one. This is not a holding that the defendant would have been entitled to the instruction if he had asked for it; but neither does the case say he could not have had it in any event, as might easily have been ruled under the Palmberg and other like cases cited in the third preceding paragraph.

Now in the instant case, as in the Barnes case just cited, the State's instruction No. 2 declared the prosecutrix was incapable of giving legal consent to the intercourse, and that the act itself would constitute rape with or without her consent. Likewise instruction No. 2 said it was immaterial whether the rape was accomplished by force or with or without her consent. But unlike the Davis case, the State's instructions were silent on the question of *failure to complain*. We have concluded the refusal of appellant's requested instructions C, D and E was not error; and that the ruling in the Palmberg and similar cases on that question is correct unless possibly in exceptional

instances as in the Davis case. Furthermore, while the evidence here is a little vague as to the date of the prosecutrix' complaint, it appears to have been made on April 26, 1939, the date of the "alleged" rape, or very shortly thereafter. There is no substantial evidence of delay as to it. If the instructions intend to refer to the antecedent rapes over a period of seven years, clearly they were properly refused. For the evidence as to those rapes was purely corroborative, and proof of failure to complain of them would merely be corroboration of corroboration. The right to cautionary instructions, even on request, can hardly be extended that far.

We cannot extend the opinion further by discussing a number of other assignments, some of which are not well founded, and others raising questions which will not recur on another trial. But we do think the assignment is well taken that the argument of the State's counsel was improper. It has been said and repeated that "prosecutions upon a charge for which there is a human abhorrence must be conducted with scrupulous fairness so as to avoid adding other prejudice than that which the charge itself frequently produces." [State v. Davis, supra, 190 S. W. l. c. 298(1); State v. Gentry, 320 Mo. 389, 407-8, 8 S. W. (2d) 20, 28 (12).] During the opening argument of the assistant circuit attorney after referring to the birth of the prosecutrix and describing her as a little blond-haired, blue-eyed baby who was destined to have her illusions of morality shattered by her father —after that, counsel went on to say that when she was seven years old, "only two or three years older than Mr. Frein's child, daughter." Here appellant's counsel interrupted and moved for a mistrial because of the inflammatory statement which was overruled. The Attorney General makes no point on the failure to move to strike and for reprimand. Mr. Frein was a member of the jury. There was no evidence that he had a small daughter, so far as we can find. Neither was the appellant on trial for the alleged rape committed when the prosecutrix was seven years old. In his peroration during the closing argument the same counsel told the jury they owed a duty to *their* children and the children of society (objection overruled); and that he knew they would perform that duty by convicting "this sexual beast." A motion for mistrial was overruled.

In State v. Topolovacki (Mo. Div. 2), 213 S. W. 104, 105(5), for rape of a girl 12 years old (not father and daughter) the prosecutor called the appellant a "scoundrel." An objection was sustained and the jury instructed to disregard it. This court said the language was "violent" but perhaps deserved. Held: the incident did not call for a mistrial order. In State v. Wilkins (Mo. Div. 2), 100 S. W. (2d) 889, 897 (25), three young men raped a pregnant married woman. The intercourse was admitted and defended on the ground that it was voluntary. In argument the prosecutor called appellant a "brute" and later said the boys were actuated by "brute instinct."

An objection was sustained both times. Held: the argument was not improper and disclosed no reversible error. In State v. Ward, 337 Mo. 425, 436, 85 S. W. (2d) 1, 7, forcible rape of a white woman by a negro, the prosecutor referred to the defendant as: "this copper— this saddle colored defendant, this brute in man's form, violating not only God's law . . ." An objection was sustained and counsel rebuked. Held: the argument was improper and erroneous, but cured by the reprimand. Nothing more was asked.

On the other hand, in State v. Dixon (Mo. Div. 2), 253 S. W. 746, 748(6), a prosecution for chicken stealing, the prosecutor called the appellant a "dirty, low-down hound and scoundrel." Held: this was grossly unprofessional and prejudicial. In State v. Bobbst, 131 Mo. 335, 338, 32 S. W. 1149, 1151, the charge being enticing away a female 17 years old for the purpose of concubinage, the prosecutor denounced the appellant as "this infamous, lecherous scoundrel." In spite of objections the court declined to administer a reprimand. Held reversible error. In State v. Fischer, 124 Mo. 460, 461, 464, 27 S. W. 1109, where the charge was seduction under promise of marriage, the prosecutor called the defendant "a low and contemptible brute, unworthy the respect of the community." The court declined a reprimand. Held: reversible error.

Considering the whole record in this case; the vacillation of the prosecutrix and her mother; the low mentality of all the parties immediately involved; the difficulty of arriving at the truth; and the inflammatory nature of the charge; we think the argument calls for a new trial. [See 3 Wigmore on Evid. (3 Ed.), sec. 924a, p. 459, et seq.] Here was a case brimful of everything likely to excite human prejudice and abhorrence from the beginning. On proof of guilt the jury naturally could be expected to assess adequate punishment. The State's counsel are under a double duty—to insure a fair trial as well as to enforce the law. This is not meant as a criticism—far from it, in view of the revulsion that naturally would be aroused by the evidence. But the situation called for all the more restraint on the part of the responsible officers. The judgment is reversed and the cause remanded. All concur.