STATE of Missouri, Respondent,

v.

W——— F. W———, Appellant.

No. 14405.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 5, 1986.

Motion for Rehearing and Transfer to
Supreme Court Denied
Nov. 25, 1986.

Application to Transfer Denied
Jan. 13, 1987.

Pete E. Carter, Sp. Asst. Public Defender, Salem, for appellant.

William L. Webster, Atty. Gen., Kevin B. Behrndt, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Chief Judge.

W____ F. W____ ("defendant"), tried as a persistent offender, § 558.016.3, RSMo Cum.Supp.1984, was found guilty by a jury of two counts of the class B felony of rape, § 566.030.3, RSMo Cum.Supp.1984,[1] and sentenced by the trial court to 30 years' imprisonment on each count, the sentences to run concurrently.

Defendant appeals, maintaining that the evidence was insufficient to support the verdicts, and that the trial court erred in certain evidentiary rulings. Defendant also raises two instructional issues.

1. Section 566.030.3, RSMo Cum.Supp.1984, states: "A person commits the crime of rape if he has sexual intercourse with another person

We deal first with defendant's point IV, which challenges the sufficiency of the evidence. In deciding that issue, we consider the evidence and all inferences reasonably to be drawn therefrom in the light most favorable to the verdicts, and disregard all contrary evidence and inferences. *State v. Guinan*, 665 S.W.2d 325, 327 (Mo. banc 1984), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984); *State v. McDonald*, 661 S.W.2d 497, 500[1] (Mo. banc 1983), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985). The test is whether the evidence, so viewed, was sufficient to make a submissible case from which rational jurors could have found beyond a reasonable doubt that defendant was guilty. *State v. Bonuchi*, 636 S.W.2d 338, 340 (Mo. banc 1982), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446 (1983); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560, 576–77 (1979).

The alleged victim was defendant's daughter, B____ R____ W____ ("B____"), who was 12 years of age at the time of the incidents in question. B____ is the next oldest of defendant's four children. The oldest, a boy, F____, was 14 during the period in question. Defendant's two youngest children are both girls.

B____ testified that one day between June 5, 1984, and July 5, 1984, while her mother, her brother, and her youngest sister were gone to a store, defendant told B____'s other sister to "[g]o up to the other house and get a broom to sweep the floor." As we understand the evidence, the family was in the process of moving from one house to another, "probably a hundred yards" away.

Then, said B____:

> "While she was gone my dad told me to pull down my pants and I said, 'No.' And he said—He asked me again and I said, 'No.' So he pulled down my pants for me and insert his penis into my vagina, and then about that time

to whom he is not married who is less than fourteen years old."

my other sister come back with the broom. And he told me to get up, go around the house, and clean myself up.

Q. Did you do that?

A. Yes.

Q. Okay. What part of you did you clean up?

A. My vagina.

Q. And why did you clean it? What happened when he was done?

A. White stuff come out."

Asked whether anything like that occurred thereafter, B____ answered, "Yes." She fixed the date of the second incident as August 23, 1984, defendant's birthday.[2] B____ recalled that she and defendant were outdoors near their home looking for "props."[3] B____ testified that defendant sat down to rest, and she sat beside him. Then, this:

"[H]e asked me to pull down my pants, and I said, no, because it was getting dark. And so he said if I didn't pull them down, he'd pull them down for me and I still said no. So he pulled my pants down, inserted his penis into my vagina, and then I started crying and told him I wanted to leave. And he said, 'In a few minutes.' Well, about five minutes went by and I asked him again, I said, 'I want to leave.' He goes, 'Well, okay.' And then we went up to the truck, and he told me to clean myself up and he give me a rag, and I clean myself up, and then we went home."

Evidently, B____ told no one about either incident until September 10, 1984, when she told her mother. B____'s mother immediately took B____ to the office of the Division of Family Services in Ironton, where B____ was interviewed by Sheriff Kenneth Wayne Ruble of Iron County.[4] B____ related the two incidents to Sheriff Ruble, who thereupon requested the prosecuting attorney to apply for a warrant. One was issued, and defendant was arrested.

One D____ W____, the wife of a brother of defendant, testified that some time after defendant's arrest, B____'s mother brought B____ to D____ W____'s home. There, according to D____ W____, a conversation took place between B____, her mother and D____ W____. At trial, D____ W____ was asked whether, during that conversation, B____ had stated that she had engaged in intercourse with anyone. D____ W____ answered, "Yes, she did." Then, this:

"Q. Who did [B____] say she had had intercourse with?

A. Her brother."

B____, during cross-examination, was asked about the conversation with D____ W____:

"Q. And you told your aunt that you made the story up; didn't you?

A. Yes.

Q. And you said nothing had ever happened, right?

A. Yes.

.     .     .     .     .

Q. ... you did tell your aunt though that your father didn't have sex or intercourse with you; didn't you?

A. Yes."

We cannot determine from the record whether the conversation between B____ and D____ W____ occurred before or after defendant's preliminary hearing. We do, however, take note that in B____'s trial testimony, she confirmed that she had testified at the preliminary hearing, and that her testimony at that proceeding was the same as her testimony at trial.

On January 16, 1985, some time after the preliminary hearing, Russell Qualls, an investigator for the public defender, interviewed B____ at B____'s home, in her mother's presence. Qualls asked B____ whether defendant had had "sex" with her. B____ answered, "No." Qualls also asked B____ why she had told her mother that defend-

---

**2.** Defendant, age 40 at time of trial, acknowledged that August 23 is his birthday.

**3.** Defendant, a timber cutter, explained that props are pieces of timber used in coal mines.

**4.** The alleged offenses occurred in Iron County. The cause was tried in Dent County on change of venue.

ant had raped her. B____ replied: "Oh, I don't know. I guess since they were fighting so much I didn't really want him around because he would always fight with my mom and everything, and he would get mad and go out and stay a night or two."

At trial, B____ testified that her statements to Qualls were not the truth. Asked by the prosecutor why she made those statements, B____ explained, "Because I felt sorry for my dad and I didn't want him to go to the pen."

In maintaining that the evidence was insufficient to support the verdicts, defendant's point IV states:

> "The court erred in refusing to grant defendant's motion for judgment of acquittal at the close of the State's evidence and defendant's judgment of acquittal at the close of all the evidence in that a defendant may not be convicted of rape if the alleged victim's testimony is inconsistent, contradictory or unbelievable, and, in the case at hand, the alleged victim's prior inconsistent statements which contradicted her statements at trial were admitted into evidence without being limited by the State, and, therefore, were substantive evidence of the alleged victim's testimony, and her testimony when viewed in toto, was contradictory and inconsistent, and unsubstantiated by other evidence."

■ Defendant, at the close of the State's evidence, moved for a judgment of acquittal. The trial court denied the motion. Defendant thereupon presented evidence in his own behalf, thereby waiving any error with respect to the denial of the motion. *State v. Green,* 476 S.W.2d 567, 569[2] (Mo.1972); *State v. Campbell,* 655 S.W.2d 96, 97[1] (Mo.App.1983). Consequently, our consideration of defendant's point IV will be based on all of the evidence.

Defendant begins his argument under point IV by acknowledging the Missouri rule that a conviction for rape may be had upon the uncorroborated evidence of the prosecutrix. *State v. Baldwin,* 571 S.W.2d 236, 239[4] (Mo. banc 1978). Defendant

reminds us, however, that in those cases where the evidence of the prosecutrix is of a contradictory nature or, when applied to the admitted facts in the case, her testimony is not convincing and leaves the mind of the court clouded with doubts, she must be corroborated or a conviction cannot be sustained. *Id.* Defendant points out that B____, in her trial testimony, admitted telling D____ W____ that defendant had not had sexual intercourse with her, and also admitted telling investigator Qualls that defendant had not had sexual intercourse with her.

Defendant emphasizes that when B____ gave that testimony, the prosecutor did not request the trial court to instruct the jury that B____'s out-of-court statements to D____ W____ and Qualls were admissible only for the purpose of determining B____'s credibility as a witness, and were not to be considered by the jury as evidence of the matters contained therein.

Our examination of the record confirms the accuracy of defendant's assertion, and further reveals that no such limiting instruction was given by the trial court *sua sponte.*

Availing himself of those circumstances, defendant proceeds to the apex of his argument, which, in his words, is: "Since the prosecutrix' prior statements that the Defendant did not have sexual intercourse with her were admitted without limitation, they were substantive evidence, and, therefore, her testimony was contradictory and required corroboration." Defendant asserts that B____'s testimony was never corroborated; consequently, his conviction cannot stand.

Obviously, the viability of defendant's theory hinges on the premise that the trial court's failure to give the jury a limiting instruction requires us to treat B____'s out-of-court statements to D____ W____ and Qualls as if those statements had been uttered by B____ under oath during her testimony at trial. That, of course, would be a fantasy, as B____ did not make those statements at trial, she merely admitted at

trial that she had, *in the past,* made those statements.

The only case cited by defendant in support of his hypothesis is *State v. Nimrod,* 484 S.W.2d 475 (Mo.1972). There, the accused presented evidence that a prosecution witness, at the accused's preliminary hearing, gave testimony which, according to the accused, was inconsistent with the witness' trial testimony. The accused requested the trial court to give an instruction limiting the alleged inconsistent testimony to "impeachment only." [5] The trial court refused. On appeal, the accused assigned the refusal as error. The point was rejected on the ground that the witness' earlier testimony was not inconsistent with his trial testimony, and therefore did not constitute impeachment. *Id.* at 478[2]. The opinion, however, contained the following language, which is seized upon by defendant in the instant case:

"... the giving of the [limiting] instruction depends on the twin requirements that the jury need be instructed on the proper use of the evidence as impeachment and warned that it may not be used as substantive evidence. Neither requirement exists under the facts of this case. The evidence did not impeach the witness and the [accused] having offered it himself, waived any protection normally afforded by the rule.

Nor will the holding of this case present any problem for the [accused] seeking to offer truly impeaching testimony. If he does so and the state fails to object or request instruction, then the [accused] will have the advantage of full use of such testimony for all purposes." *Id.* at 479–80. (Citations omitted.)

Defendant, as we understand him, maintains that the phrase "full use of such testimony for all purposes" in the last sentence quoted above means that when B▬ admitted, during her trial testimony, that she had, in the past, made the out-of-court statements to D▬ W▬ and Qualls, and the trial court gave no instruction limiting the use of those statements to impeachment, B▬'s out-of-court statements automatically took on the character of "testimony," thereby rendering B▬'s testimony contradictory and activating the corroboration requirement of *Baldwin.*

■ In our view, *Nimrod* does not support that proposition. *Nimrod,* as we read it, says that where evidence that a witness made a prior statement inconsistent with his trial testimony is received for the purpose of impeachment, but the trial court fails to give the jury an instruction limiting such evidence to such purpose, the party adducing the impeaching statement may thereafter use it like any other evidence. *Nimrod* does not say, however, that the prior inconsistent statement is to be treated as if the utterer made it at trial, thereby triggering the *Baldwin* rule, i.e., that where the testimony of the prosecutrix in a rape case is contradictory, corroboration is necessary to uphold a conviction. No such issue was present in *Nimrod,* and nothing in that opinion suggests that the passage set out above is to be given the effect argued for by defendant.

In the instant case, the narratives of the two alleged rapes given by B▬ at trial were clear, firm, consistent and convincing, and, according to B▬, were identical to the versions she had given at the preliminary hearing. We find nothing contradictory in those narratives, nor do we find them inconsistent with any admitted facts.

That being so, B▬'s testimony, even if uncorroborated,[6] is sufficient to support

**5.** The instruction requested by the accused in *Nimrod* read: "Evidence that on some former occasion a witness other than defendant made a statement consistent or inconsistent with his testimony in this case may be considered by you in deciding the credibility of the witness and the weight to be given to his testimony. However, any prior statement of the witness must not be considered by you as evidence of the matters

referred to in that statement, except as to such matters, if any, as you may find were admitted to be true by the witness in his testimony in this case." 484 S.W.2d at 477.

**6.** While it might be argued by the State that B▬'s disclosures to her mother on September 10, 1984, constituted corroboration, *State v.*

the verdicts. Accordingly, defendant's point IV, while ingenious, is without merit.

We next consider defendant's point I, which asserts that the trial court erred in refusing to allow defendant to introduce evidence of B____'s "prior sexual activities." Defendant insists that such evidence was admissible to dispel any inference the jury might have drawn that a 13-year-old girl[7] would be unable to describe the two incidents for which he was on trial unless they had in fact occurred. In defendant's words, "an inference is raised in the minds of the jurors that the only way a young prosecutrix could have knowledge of sexual intercourse is to have actually had sexual intercourse with the defendant."

The evidence of B____'s "prior sexual activities" was presented by defendant to the trial court in an in camera hearing. One C____ W____, a nephew of defendant, testified that on two occasions, the later of which was the weekend before July 4, 1984, he saw B____ swimming with her brother, F____, in a river. On both occasions, according to C____ W____, he saw F____ pinching B____ "in her genital area and on her breasts." C____ W____ related that on both occasions, B____ told F____, "If you don't stop, I'll run and tell Daddy." Asked whether he had seen any other acts of "sexual conduct," C____ W____ replied, "No."

The trial court ruled C____ W____'s testimony inadmissible. Defendant's point I insists that ruling was error.

Defendant, in support of point I, relies exclusively on *Summitt v. State*, 101 Nev. 159, 697 P.2d 1374 (1985). There, the accused was convicted of one count of cunnilingus and one count of fellatio, the victim being a six-year-old girl. At trial, the accused sought to introduce evidence that prior to the alleged crimes, the same girl had been the victim of fellatio and sexual intercourse. The accused contended that this evidence would show that the victim had prior independent knowledge of acts

similar to those which formed the basis of the prosecution against him. The trial court rejected the evidence on the ground that Nevada's "rape victim shield law" barred its admission.

On appeal, the convictions were reversed on the rationale that it was possible jurors would believe that the victim would be unable to describe the acts charged against the accused unless those acts had in fact occurred. Therefore, evidence that the victim had been subjected to similar acts would demonstrate to the jurors that the victim could describe acts like those charged against the accused even if the accused were innocent. *Id.* 697 P.2d at 1377.

■ The circumstances that existed in *Summitt* are notably absent in the instant case. The testimony of C____ W____, viewed in the light most favorable to defendant, fails to establish that during the two incidents allegedly witnessed by C____ W____, there was any sexual activity even remotely akin to the crimes charged against defendant. Nothing in C____ W____'s testimony suggested that F____ exposed his genitalia to B____, or that F____ attempted to engage in sexual intercourse with B____. Consequently, we reject defendant's argument that C____ W____'s testimony would have shown the jurors that B____, by reason of F____'s conduct in the river, acquired knowledge of sexual intercourse enabling her to falsely accuse defendant.

Moreover, as demonstrated by an excerpt from the cross-examination of B____'s mother (quoted *infra* in our discussion of defendant's point III), B____ had evidently, through inadvertence, witnessed her mother and defendant engaging in sexual intercourse. That circumstance was sufficient to dispel any inference the jurors might have harbored that B____'s only exposure to sexual intercourse was during the incidents for which defendant was on trial.

Point I is denied.

*Richardson,* 349 Mo. 1103, 163 S.W.2d 956, 960–61[6, 7] (1942), we need not decide that issue.

7. B____ was 13 at time of trial.

We turn now to defendant's point III, which concerns the following cross-examination of B____'s mother:

"Q. Did you and [the defendant] ever have sexual intercourse in front of the children?

A. Deliberately, no.

Q. Did it ever happen accidentally?

A. A time or two, yes.

Q. Mrs. [W____], do you know [G____ P____]?

A. Yes, I do.

Q. Have you ever had intercourse with [G____ P____] while the children were present?

[PROSECUTOR]: Your Honor, I'm going to object. That's clearly irrelevant and immaterial. Has nothing to do with the issues before the Court."

A bench conference ensued, at the conclusion of which the trial court sustained the objection.

Defendant argues that the trial court erred in sustaining the objection, in that the mother's answer would have helped dispel the inference that B____ could not have had knowledge of sexual activity unless defendant committed the acts charged. Again, defendant relies exclusively on *Summitt.*

The flaw in defendant's contention is that nowhere in the transcript do we find an offer of proof by defendant as to what the answer of B____'s mother would have been had the prosecutor's objection been overruled.

■ When an objection is sustained to proffered evidence, the party offering the evidence must demonstrate its relevancy and materiality by way of an offer of proof in order to preserve the matter for appellate review. *State v. Dixon,* 655 S.W.2d 547, 557[14] (Mo.App.1983), *cert. denied,* 464 U.S. 1072, 104 S.Ct. 982, 79 L.Ed.2d 219 (1984); *State v. Ealey,* 624 S.W.2d 465, 469[4] (Mo.App.1981).[8] The offer of proof must state facts which are specific and sufficient in detail to establish the admissibility of the evidence sought to be introduced. *State v. Umfrees,* 433 S.W.2d 284, 286[1] (Mo. banc 1968); *Dixon,* 655 S.W.2d at 557[15].

Having failed to inform the trial court what the testimony of B____'s mother would have been had she answered the question, defendant cannot, on appeal, convict the trial court of error. Point III is, accordingly, rejected.

We next address defendant's point V, which assigns error in the trial court's refusal to give an instruction requested by defendant, based on MAI–CR 2d 3.52.[9]

■ The State astutely points out that defendant has neglected to set forth the instruction in full in the argument portion of his brief, and has thereby violated Rule 30.06(e), Missouri Rules of Criminal Procedure (17th ed. 1986). By reason thereof, defendant has failed to preserve the point for appellate review. *State v. Holt,* 660 S.W.2d 735, 738[10] (Mo.App.1983); *State v. Edwards,* 650 S.W.2d 655, 659[4] (Mo. App.1983).

■ Furthermore, the instruction, had it been given, would have benefited the *State,* not defendant, as it would have informed the jurors that B____'s out-of-court statements to D____ W____ and investigator Qualls could be considered only for the purpose of deciding the believability of B____ and the weight to be given her testimony. Why defendant wanted the trial court to give that instruction when, under

---

8. A narrow exception to the above rule appears in *Frank v. Environmental Sanitation Management, Inc.,* 687 S.W.2d 876, 883–84[14] (Mo. banc 1985). The exception does not apply here.

9. The instruction requested by defendant read: "If you find and believe from the evidence that on some former occasion a witness made a statement inconsistent with her testimony in this case, you may consider such evidence for the purpose of deciding the believability of the witness and the weight to be given to her testimony. However, in deciding the guilt or innocence of the defendant, any prior statement of the witness must not be considered by you as evidence of the matters contained in the statement except as to those matters admitted by the witness to be true during her testimony in the case."

*Nimrod,* 484 S.W.2d at 479–80, he had the "full use" of B____'s out-of-court statements "for all purposes" escapes us.

Be that as it may, the point is destitute of merit, as the trial court's refusal to give the instruction operated to defendant's advantage, not his prejudice, and thus engendered no ground for reversal. *State v. Scott,* 651 S.W.2d 199, 201[1] (Mo.App. 1983); *State v. Lowery,* 565 S.W.2d 680, 683–84[1] (Mo.App.1978).

The other instructional error assigned by defendant appears in point VI. There, defendant seeks reversal because the record does not show which instructions were given at the request of the State and which instructions, if any, were given at the request of defendant.[10]

At the close of the evidence, the trial court conducted a conference regarding the instructions to be given the jury. The court identified by number each instruction the court intended to give, but failed to state whether any of them had been requested by either party. The court did, however, inquire, "Are there any other instructions to be offered?"

In response, defense counsel requested the instruction discussed *supra* in point V which, as we have seen, was refused. After announcing that ruling, the court asked, "Anything further to be offered?"

Defense counsel replied, "No, Your Honor."

The court then stated: "That completes this instruction conference. Is there anything else for the record at this point in time?"

Defense counsel answered, "No, sir."

The gist of defendant's point VI is, in his words: "It has long been held by the Appellate Courts of the State of Missouri that a defendant may not complain of instructions which he offered and which were accepted by the court. [Citation omitted.] Because the trial court failed to make a record of what instructions were required by which party, the defendant is precluded from raising any objections about the instructions which were submitted to the jury."

Whether the trial court's oversight indeed placed defendant in such a predicament is a subject we need not explore.

■■■ Nowhere in the record is there any objection by defendant to any of the instructions given by the trial court, nor is there anything in defendant's motion for a new trial assigning error in the giving of any of the instructions. Where no timely objection is made to instructions, and no assignment of error regarding instructions is contained in an accused's motion for new trial, nothing pertaining to the instructions is preserved for appellate review. Rule 28.03, Missouri Rules of Criminal Procedure (16th ed. 1985); *State v. Young,* 610 S.W.2d 8, 12[1] (Mo.App.1980), *cert. denied,* 452 U.S. 908, 101 S.Ct. 3037, 69 L.Ed.2d 410 (1981); *State v. Johnson,* 604 S.W.2d 787, 789[3] (Mo.App.1980). Additionally, defendant's brief contains no allegation that any instruction given by the trial court was erroneous, and our *ex gratia* examination of the instructions discloses no error.

In these circumstances, it is manifest that defendant was not prejudiced by the trial court's failure to dictate into the record which party requested each instruction. Point VI is meritless.

Defendant's remaining assignment of error (point II) alleges that during the hearing on the allegation that defendant was a persistent offender, certain "records"—not otherwise described—were improperly received in evidence by the trial court. Defendant maintains that "no proper foundation was laid for the admission of such records." Defendant supplies no clue as to how the "foundation" was insufficient.

---

**10.** Rule 28.02(f), Missouri Rules of Criminal Procedure (16th ed. 1985), provides, in pertinent part: "The court shall dictate into the record which party requested each instruction and verdict form given or refused and which instructions and verdict forms were given on the court's own motion."

Our examination of the transcript reveals that during such hearing, documents marked, respectively, as Plaintiff's Exhibit No. 1, Plaintiff's Exhibit No. 2, and Plaintiff's Exhibit No. 3 were received in evidence. The record on appeal contains the latter two exhibits, but not Plaintiff's Exhibit No. 1.

■ It is an appellant's duty to ensure that the record on appeal includes all the evidence and proceedings necessary for determination of the questions presented. *State v. Sanner,* 655 S.W.2d 868, 878[11] (Mo.App.1983); *State v. Gordon,* 527 S.W.2d 6, 10[5] (Mo.App.1975). Inasmuch as Plaintiff's Exhibit No. 1 is not before us, we confine our attention under Point II to Plaintiff's Exhibit No. 2 and Plaintiff's Exhibit No. 3.

■ Each of those exhibits was certified as a true copy of a record of the Circuit Court of Iron County, Missouri. The certification on each exhibit recited that the clerk of said court had set her hand and affixed the seal of said court thereto. Beneath the certification on each exhibit appeared the name of the Circuit Clerk, and the signature of a deputy circuit clerk.

Section 490.130, RSMo 1978, provides, in pertinent part:

"Copies from the record of proceedings of any court of record of this state, attested by the clerk thereof, with the seal of the court annexed ... shall be received as evidence of the acts or proceedings of such court of record in any court of this state."

In *State v. Robb,* 439 S.W.2d 510, 513 (Mo.1969), a true copy of certain records of proceedings of a Missouri circuit court, signed and attested by the circuit clerk, acting through a deputy clerk, with the official seal of the court impressed thereupon, was held admissible in determining whether the accused was a second offender under § 556.280, RSMo 1959 (since repealed). Plaintiff's Exhibit No. 2 and Plaintiff's Exhibit No. 3 meet the admissibility requirements of § 490.130 and *Robb.* Moreover, defendant, during his testimony, admitted the two convictions shown in the exhibits. Therefore, even had there been a flaw in the "foundation" of the exhibits, it would afford defendant no basis for relief. *State v. Newland,* 592 S.W.2d 495, 501–02[10] (Mo.App.1979). Point II is, accordingly, denied.

■ Having found no merit in any of defendant's assignments of error, we would, in ordinary circumstances, be finished with our task. However, the State, in its brief, asserts that by reason of § 558.026.1, RSMo Cum.Supp.1984, the trial court was required to order that defendant's sentences run *consecutively.*

Section 558.026.1, RSMo Cum.Supp.1984, provides, in pertinent part:

"Multiple sentences of imprisonment shall run concurrently unless the court specifies that they shall run consecutively; except that, in the case of multiple sentences of imprisonment imposed for the felony of rape, ... *and for other offenses committed during or at the same time as that rape,* ... the sentences of imprisonment imposed for the other offenses may run concurrently, but the sentence of imprisonment imposed for the felony of rape ... shall run consecutively to the other sentences." (Emphasis added.)

In *State v. Toney,* 680 S.W.2d 268 (Mo. App.1984), cited by the State, the accused was convicted of forcible rape and sodomy. Both crimes were committed on the same date against the same victim, one crime immediately following the other. The accused was sentenced to consecutive terms of imprisonment. On appeal, he contended that the segment of § 558.026.1 which mandates that a sentence for a sex crime be served consecutively to sentences "for other offenses committed during or at the same time" as the sex crime is restricted to situations where an accused is convicted of a sex crime and one or more nonsexual crimes. The appellate court held that the statute was not so limited, and that it requires a consecutive sentence for the sexual offense where the accused is convicted of a sex crime and one or more offenses *which occurred at the same time as, or*

*during,* the sexual offense, regardless of whether the other offense or offenses were also sex crimes. *Id.* at 273[4].

It is evident that *Toney* does not cover the situation before us in the instant case. Here, the two rapes were not "committed during or at the same time." They were, according to the evidence, separated by at least seven weeks.

The State also cites *Adams v. State,* 688 S.W.2d 401, 403 (Mo.App.1985); *State v. Shaw,* 701 S.W.2d 514, 517–18[4] (Mo.App. 1985); and *State v. Blockton,* 703 S.W.2d 500, 507[5] (Mo.App.1985). However, a careful reading of those cases reveals that in each, the sex crimes occurred "during or at the same time." Consequently, those cases, like *Toney,* do not mandate consecutive sentences in the circumstances here.

We find nothing in § 558.026.1 requiring that defendant's sentences in the instant case be served consecutively. The trial court, of course, had that option, but chose not to exercise it.

Judgment affirmed.

GREENE, P.J., and TITUS, J., concur.

